RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0161p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

JAMAL THOMAS,

*Petitioner-Appellant,*

*v.*

No. 16-2301

GEORGE STEPHENSON, Warden,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:09-cv-12958—Stephen J. Murphy, III, District Judge.

Argued: January 24, 2018

Decided and Filed: August 6, 2018

Before: BATCHELDER, GILMAN, and ROGERS, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Emmett E. Robinson, JONES DAY, Cleveland, Ohio, for Appellant. Jared D. Schultz, OFFICE OF THE ATTORNEY GENERAL OF MICHIGAN, Lansing, Michigan, for Appellee. **ON BRIEF:** Emmett E. Robinson, JONES DAY, Cleveland, Ohio, for Appellant. Andrea M. Christensen-Brown, OFFICE OF THE ATTORNEY GENERAL OF MICHIGAN, Lansing, Michigan, for Appellee.

BATCHELDER, J., delivered the opinion of the court in which ROGERS, J., joined. GILMAN, J. (pp. 11–23), delivered a separate dissenting opinion.

_____

**OPINION**

_____

ALICE M. BATCHELDER, Circuit Judge.   Petitioner Jamal Thomas is a Michigan state prisoner who was convicted of several crimes, including assault with intent to commit murder, after he participated in a violent home invasion.  Thomas unsuccessfully challenged in state court his conviction for assault with intent to commit murder, arguing that there was insufficient evidence to support that conviction.  He then filed a federal habeas corpus petition under 28 U.S.C. § 2254, which the district court denied.  We **AFFIRM.**

**I.**

On habeas review, we presume correct the factual findings of the Michigan state courts. *See* 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009).  Our statement of the facts below includes both the facts stated by the Michigan Court of Appeals and additional facts from witness testimony at trial which Thomas has not disputed here.

In April 2005, Thomas held Rodney Harrison hostage in his own home for several hours while another man, Larry Davidson, searched Harrison's home for a large sum of money that Thomas and Davidson believed was hidden in the home.  *See People v. Thomas*, No. 270679, 2007 WL 4355431, at *1 (Mich. Ct. App. Dec. 13, 2007).  Davidson first gained entry into Harrison's home by trickery, and then held Harrison at gunpoint while calling Thomas on the phone, telling Thomas that he was "in," and instructing Thomas to come to the side door of Harrison's home.  *Id.*  Once Thomas was inside, Davidson told Thomas to keep his eyes on Harrison and to shoot Harrison if he made a sound.  *Id.*  Thomas then told Harrison to sit on the sofa with his hands underneath his thighs, and threatened to kill Harrison if he moved or made a sound.  *Id.*

For the next two-and-a-half hours, Thomas held a gun to Harrison's head while Davidson ransacked the home.  *Id.*  At the end of this time, Davidson had still not found the money.  A third man arrived and told Thomas and Davidson to "[t]ie [Harrison] up, execution-style." Before they tied him up, Davidson told Harrison that "I'm about to shoot your motherf***ing

ass," "You're about to die," and "I'm going to shoot you with your own f***ing gun. Naw[,] I'm going to shoot you with [my] gun." The men then put Harrison on his stomach, handcuffed him, blindfolded him, tied his feet, and tied his legs together. As he lay on the floor, Harrison thought that the men were going to shoot him.

Davidson then attacked Harrison, kicking him several times in the kidney and pistol-whipping his head. Harrison later suffered from a malfunctioning kidney as a result of the kicks. Thomas himself did not kick or pistol-whip Harrison.

After this attack, Davidson made a phone call within earshot of Harrison, during which he said, "We cannot find the money or the dope. We've got to put four bullets in this mother****er because he's a big guy, and we've got to put two into his wife."

Harrison's wife returned home from work towards the end of the home invasion, but quickly left once she realized what was happening. Upon seeing her, Thomas said "Damn, she's here. She's getting away," and chased her. Harrison's wife escaped to a neighbor's home and called the police, but the men had left the Harrisons' home by the time the police arrived.

A Michigan jury convicted Thomas of assault with intent to commit murder, Mich. Comp. Laws § 750.83, among other crimes committed during the home invasion. *Id.* Thomas received a sentence of 50-to-100 years' imprisonment as a result of the assault-with-intent-to-commit-murder conviction. *Id.* On appeal, Thomas argued that the state did not present sufficient evidence to convict him of assault with intent to commit murder, but the Michigan Court of Appeals disagreed and affirmed Thomas's sentence. *Id.* at *1–3. The Michigan Supreme Court denied leave to appeal. *See People v. Thomas*, 747 N.W.2d 286 (Mich. 2008).

In 2009, Thomas initiated federal habeas corpus proceedings under 28 U.S.C. § 2254. The district court held those proceedings in abeyance while Thomas exhausted his state-court remedies for a different claim. When the district court reopened the proceedings, Thomas argued among other things that his "conviction for assault with intent to commit murder [was] not supported by sufficient evidence." The district court denied relief on that claim, and we granted a certificate of appealability for that claim only.

## II.

## A.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides the standard of review in this case. Federal courts may grant a writ of habeas corpus to a state prisoner on a claim that was adjudicated on the merits in state court proceedings only where the state court proceeding "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). We granted Thomas a certificate of appealability "solely as to [his] claim regarding sufficiency of the evidence for assault with intent to commit murder," so a writ of habeas corpus may issue only if he can show that his Michigan state court proceeding "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d)(2).

Criminal defendants have a due-process right not to be convicted of a crime "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [they are] charged." *In re Winship*, 397 U.S. 358, 364 (1970). But under AEDPA, our review of a state-court conviction for sufficiency of the evidence is very limited. *See Brown v. Konteh*, 567 F.3d 191, 204 (6th Cir. 2009). We give two layers of deference to state-court convictions.

*First*, as in other sufficiency-of-the-evidence challenges, we determine "whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 205 (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We do not "reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury." *Id.* This means that "even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution." *Id.*

*Second*, "even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt . . . we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.* (emphases omitted) (citing 28 U.S.C. § 2254(d)(2)).

"[T]his standard is difficult to meet," no doubt, but "that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "[H]abeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* at 102–03 (internal quotation marks and citation omitted).

**B.**

"In Michigan, the crime of assault with intent to commit murder requires proof of three elements: '(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder.'" *Warren v. Smith*, 161 F.3d 358, 361 (6th Cir. 1998) (citations omitted). This actual intent to kill "may be proven by inference from any facts in evidence," *id.* (quoting *People v. Hoffman*, 570 N.W.2d 146, 150 (Mich. Ct. App. 1997)), including:

> the nature of the defendant's acts constituting the assault; the temper or disposition of mind with which they were apparently performed[;] whether the instrument and means used were naturally adapted to produce death[;] his conduct and declarations prior to, at the time, and after the assault[;] and all other circumstances calculated to throw light upon the intention with which the assault was made.

*Id.* (quoting *People v. Taylor*, 375 N.W.2d 1, 8 (Mich. 1985)). "Because of the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient." *People v. McRunels*, 603 N.W.2d 95, 102 (Mich. Ct. App. 1999).

A person may also be convicted of assault with intent to commit murder as an aider and abettor. *Warren*, 161 F.3d at 361. The aider and abettor must "himself possess the required intent or participate while knowing that the principal possessed the required intent." *Id.* (quoting *People v. Rockwell*, 470 N.W.2d 673, 676 (Mich. Ct. App. 1991) (alterations omitted)). "The aider and abettor's specific intent or his knowledge of the principal's specific intent may be inferred from circumstantial evidence." *Id.* (internal quotation marks and citations omitted).

"Factors that may be considered include a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime." *People v. Carines*, 597 N.W.2d 130, 135 (Mich. 1999) (citation omitted).

## C.

The Michigan Court of Appeals affirmed Thomas's conviction for assault with intent to commit murder, finding sufficient evidence to establish Thomas's guilt both as a principal and as an aider and abettor. *Thomas*, 2007 WL 4355431, at *2–3. We may grant habeas relief only if both of these determinations by the Michigan Court of Appeals constituted an unreasonable application of the *Jackson* standard. *See Brown*, 567 F.3d at 205; *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable— a substantially higher threshold.").

## 1.

The state presented sufficient evidence from which a rational jury could have found that Thomas assaulted Harrison, with an actual intent to kill Harrison, in circumstances where a successful killing would have been murder. *(1) Assault*: Although Harrison did not testify that Thomas himself kicked or pistol-whipped Harrison, "[n]o actual physical injury is required for the elements of the crime to be established." *Thomas*, 2007 WL 4355431, at *2 (quoting *People v. Harrington*, 487 N.W.2d 479, 483 (Mich. Ct. App. 1992)). "An assault may be established by showing . . . an unlawful act that places another in reasonable apprehension of receiving an immediate battery." *Id.* at *3 (citing *People v. Starks*, 701 N.W.2d 136, 140 (Mich. 2005)). The state presented evidence that Thomas held a gun to Harrison's head for two-and-a-half hours and threatened to kill Harrison if he moved or made a sound, and a rational juror could have inferred from this evidence that Thomas assaulted Harrison. *(2) With an Actual Intent to Kill*: Thomas primarily argues that he did not have an actual intent to kill Harrison, but such an intent may be inferred from any facts in evidence, and only minimal circumstantial evidence is required. *See McRunels*, 603 N.W.2d at 102. In addition to the evidence about Thomas's holding a gun to Harrison's head and threatening to kill him, the state also presented evidence that Thomas and

the other men tied Harrison up "execution-style." A rational juror could have inferred from this evidence that Thomas had an actual intent to kill Harrison. *(3) Which, If Successful, Would Make The Killing Murder*: There is no doubt that, if Thomas had successfully killed Harrison under these circumstances, the killing would have been murder, and Thomas does not dispute this. *Cf. Taylor*, 375 N.W.2d at 7 ("To find [a] defendant guilty . . . the jury must find the intent to kill under circumstances which would have made the killing murder . . . .") (citation omitted); *id.* at 3 ("the defendant intended to kill . . . under circumstances which do not justify, excuse[,] or mitigate the crime") (citation omitted). A rational juror could therefore have found that Thomas committed assault with intent to commit murder. However, even if we were to disagree, "we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Brown*, 567 F.3d at 205 (emphasis omitted). It was not unreasonable for the Michigan Court of Appeals to determine that the state presented evidence sufficient to permit a rational juror to find that Thomas directly committed assault with intent to commit murder.

Thomas takes issue with the Michigan Court of Appeals' description of the elements of assault with intent to commit murder, and argues that a person may be convicted of assault with intent to commit murder only if he "assault[s] the victim with the intent to kill thereby (*i.e.*, by means of the assault)." In support, Thomas cites *People v. Cameron*, No. 306391, 2013 WL 951213, at *3 (Mich. Ct. App. Feb. 26, 2013), an unpublished opinion in which the Michigan Court of Appeals reversed a conviction for assault with intent to commit murder where the evidence "did not show that defendant intended that his assault result in the victim's death." But this seems inconsistent with the Michigan Court of Appeals' statement in Thomas's case that "[n]o actual physical injury is required for the elements of the crime to be established," *Thomas*, 2007 WL 4355431, at *2,[1] and the Michigan Supreme Court's statement that "[a]n assault may be established by showing . . . an unlawful act that places another in reasonable apprehension of

---

[1]To the extent that Michigan law was unclear or unsettled on this point at the time of Thomas's state proceeding, we are bound by Michigan law as interpreted by the Michigan courts in his case. "We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam).

receiving an immediate battery," *Starks*, 701 N.W.2d at 140.**2**   There are therefore two ways of interpreting Michigan state law on this point.  Either Michigan law does not require proof—or at least did not when Thomas was convicted in 2007**3**—that the defendant intended to kill the victim *by means of* the assault in question, or Michigan law is unclear or unsettled on this point. Neither of these is a ground for federal habeas relief.  *See* 28 U.S.C. § 2254(d).   Indeed, the Supreme Court has "stated many times that 'federal habeas corpus relief does not lie for errors of state law.'"  *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (citation omitted); *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (per curiam); *accord Cooey v. Coyle*, 289 F.3d 882, 901–02 (6th Cir. 2002) (claim that "Ohio court did not apply Ohio law correctly . . . is not justiciable in federal habeas proceedings").   "[I]t is only noncompliance with *federal* law that renders a State's criminal judgments susceptible to collateral attack in the federal courts."  *Wilson v. Corcoran*, 562 U.S. 1, 16 (2010) (per curiam).  Whether Michigan law clearly negates Thomas's claim or is merely unclear, it is "not the province of a federal habeas court to reexamine state-court determinations on state-law questions," *Estelle*, 502 U.S. at 67–68.

Contrary to the dissent's assertion, this case is not like *Nash v. Eberlin*, 258 F. App'x 761, 767 (6th Cir. 2007), in which we reasoned that "*[w]here the elements of a state crime are sufficiently clear as a matter of state law*, we cannot automatically uphold a conviction with insufficient proof of one of the elements on the theory that the state court in the very case has eliminated that element as a requirement."  (emphasis added).   *Nash* is of course correct— otherwise sufficiency-of-the-evidence review under *Jackson* would be meaningless.  But this case is plainly distinguishable from *Nash* because it is not "sufficiently clear as a matter of state law" that the supposed element on which Thomas relies is in fact an element of the crime.  The

---

**2**Besides, *Cameron* is clearly distinguishable.  There, the defendant's threats indicated an intent to kill the victim at some future time, and only if the victim failed to comply with the defendant's demands.  *See* 2013 WL 951213, at *3.  Here, by contrast, there was evidence from which the jury could have concluded that Thomas's intent to kill was neither conditional nor remote, but rather that he firmly intended to carry out the deed that very night.

**3**Thomas has cited no Michigan case decided before his charged conduct, his conviction, or his direct appeal requiring proof that the defendant intended to kill the victim *by means of* the assault in question.  If *Cameron* changed Michigan law in 2013 to require such proof, this has no bearing on Thomas's case.  *See Bradshaw*, 546 U.S. at 78 (a state appellate court decision "decided long after" the "offense for which respondent was convicted . . . ha[d] no bearing on" the law at the time of the charged conduct).

concerns that *Nash* expressed about undermining sufficiency-of-the-evidence review are not implicated here, where state law is either not what Thomas claims it to be or is unclear.

**2.**

The state also presented sufficient evidence from which any rational juror could have found that Thomas aided and abetted Davidson's assault with intent to commit murder. *(1) Assault*: Thomas does not dispute that Davidson assaulted Harrison when Davidson pistol-whipped Harrison in the head and repeatedly kicked Harrison in the kidney. *(2) With an Actual Intent to Kill*: The state presented significant evidence that Davidson intended to kill Harrison. Davidson also threatened to kill Harrison, and Davidson's threats were phrased more imminently than Thomas's (*e.g.*, "I'm tired of this s***. I'm about to shoot your mother***ing a**."). Davidson also pointed a gun at Harrison, and talked to Harrison about which gun Davidson would use to kill Harrison. Davidson further spoke on the phone, within earshot of Harrison and Thomas, about how many bullets it would take to kill Harrison. Davidson's actual intent to kill can also be inferred from his temper and disposition of mind, *see Warren*, 161 F.3d at 361, and Harrison's testimony about Davidson's increasing frustration and obscenities provided yet more evidence from which a rational juror could have inferred that Davidson had an actual intent to kill Harrison by the end of the night. *(3) Which, If Successful, Would Make The Killing Murder*: There is also no doubt that, if Davidson had successfully killed Harrison under these circumstances, the killing would have been murder. A rational juror could therefore have found that Davidson committed assault with intent to commit murder. To be convicted as an aider and abettor of Davidson's assault with intent to commit murder, Thomas must have "participate[d] while knowing that [Davidson] possessed the required intent." *Id.* But this knowledge may also be "inferred from circumstantial evidence," *id.*, and a rational juror could have inferred that Thomas knew Davidson possessed an actual intent to kill Harrison from Davidson's threats, obscenities and frustration, and in particular from his discussion about which gun and how many bullets to use to kill Harrison.[4] But again, even if we were to disagree, we must defer to the

---

[4]The trial testimony is unclear as to when Davidson discussed how many bullets it would take to kill Harrison and his wife. Under *Jackson*, we must resolve this ambiguity in favor of the state, *see Jackson*, 443 U.S. at 319, and so we assume the statement was made before Davidson kicked and pistol-whipped Harrison, such that it could have made Thomas aware of Davidson's intent at the time.

Michigan Court of Appeals' reasonable determination that the state presented sufficient evidence from which a rational juror could have found that Thomas aided and abetted Davidson's assault with intent to commit murder.

**3.**

Bottom line, Thomas's case was not an "extreme malfunction[]" of the Michigan criminal justice system. *See Harrington*, 562 U.S. at 102. At most, Thomas seeks "ordinary error correction," which 28 U.S.C. § 2254(d) does not allow us to provide. *Id.*

**III.**

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

———————————

**DISSENT**

———————————

RONALD LEE GILMAN, Circuit Judge, dissenting. Jamal Thomas and his codefendant, Larry Davidson, committed numerous assaults on Rodney Harrison during an April 2005 invasion of Harrison's home. But the record does not support, and the majority does not conclude, that either Thomas or Davidson intended to kill Harrison by means of those very assaults. The majority has determined, however, that the Michigan Court of Appeals's decision to affirm Thomas's assault-with-intent-to-commit-murder conviction under Mich. Comp. Laws § 750.83 was not unreasonable because either (1) an assault-with-intent-to-commit-murder conviction under Michigan law does not require proof that the defendant intended to kill the victim by means of the assaults in question, or (2) "Michigan law is unclear or unsettled on this point." Maj. Op. 8.

No Michigan court (including the Michigan Court of Appeals in Thomas's case) has ever held that Section 750.83's intent requirement can be satisfied by a defendant's intent to kill the victim at some point in the near future by means other than the assaults at issue. And with good reason—the Michigan courts' definition of the crime appears to foreclose such an interpretation. But even if, as the majority opines, Michigan law is unclear on this point, I fail to see how we can conduct a sufficiency-of-the-evidence review that provides any meaningful protection for Thomas's federal constitutional rights without first obtaining clarification from the Michigan Supreme Court on this case-determinative issue.

I believe that the majority's refusal to seek such guidance stems from a misapplication of habeas caselaw and forsakes this court's role "as guardian[] of the people's federal rights." *See Reed v. Ross*, 468 U.S. 1, 10 (1984) (quoting *Mitchum v. Foster*, 407 U.S. 225, 242 (1972)). For these reasons, I respectfully dissent.

**A.** **The reasonableness of the Michigan Court of Appeals's application of federal law depends on the breadth of Section 750.83's intent-to-kill element.**

The Fourteenth Amendment's Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt." *In re Winship*, 397 U.S. 358, 364 (1970). In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court set forth the governing standard to identify violations of that right. The *Jackson* standard requires reviewing courts to determine, "after viewing the evidence in the light most favorable to the prosecution, [whether] *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original). Because *Jackson* requires an element-by-element evaluation of the sufficiency of the evidence adduced at trial, a clear understanding of a crime's elements is essential for the proper application of that standard.

The elements of Michigan's assault-with-intent-to-commit-murder crime are "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v. Thomas*, No. 270679, 2007 WL 4355431, at *2 (Mich. Ct. App. Dec. 13, 2007) (per curiam) (quoting *People v. Brown*, 703 N.W.2d 230, 236 (Mich. Ct. App. 2005)). Read in isolation (but not, in my view, in conjunction with the crime's other two elements), the "intent-to-kill" element is susceptible of two interpretations—one broader, the other narrower. The narrower interpretation posits that a defendant convicted under Section 750.83 must have intended to kill the victim by means of the very assault in question. According to the broader reading, a defendant's intent to kill the victim at some post-assault point in the near future satisfies the element. Because the evidence was clearly insufficient to convict Thomas (either as a principal or as an accomplice) under the narrower interpretation of the intent-to-kill element, the reasonableness of the Michigan Court of Appeals's application of the *Jackson* standard hinges on whether the majority's broad interpretation of Section 750.83's intent-to-kill element is viable under the Michigan courts' precedents.

**B.      No Michigan court has ever adopted the majority's broad interpretation of Section 750.83's intent-to-kill element.**

The majority identifies no Michigan case that has adopted its broad interpretation of Section 750.83's intent-to-kill element, and the Michigan Court of Appeals's opinion in Thomas's case is no exception.  After reciting the elements of the crime, the court elaborated as follows:

> An assault may be established by showing either an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery.  For assault with intent to commit murder, "the requisite intent may be gleaned from the nature of the defendant's acts constituting the assault, the temper or disposition of mind with which they were apparently performed, whether the instrument and means used were naturally adapted to produce death, [the defendant's] conduct and declarations prior to, at the time, and after the assault, and all other circumstances calculated to throw light upon the intention with which the assault was made."

*Id*. (alteration in original) (citation omitted) (quoting *Brown*, 703 N.W.2d at 237 n.5).  Later in the opinion, the court also noted that "[n]o actual physical injury is required for the elements of the crime to be established."  *Id.* (quoting *People v. Harrington*, 487 N.W.2d 479, 483 (Mich. Ct. App. 1992)).  Absent from the court's analysis is any explicit holding that the crime's elements can be satisfied without proof that the defendant intended to kill the victim by means of the assault in question.

The majority seems to suggest, however, that such a holding was implicit in the court's reasoning.  *Cf. Sanford v. Yukins*, 288 F.3d 855, 861–63 (6th Cir. 2002) (holding that a habeas court must defer to a state court's implicit holding on a dispositive state-law question).  According to the majority, the narrower interpretation of the statute "seems inconsistent" with the Michigan Court of Appeals's statements that (1) no physical injury is required for conviction under the statute, and (2) that a defendant can commit an assault by placing the victim in reasonable apprehension of a battery but without actually attempting one.  Maj. Op. 7.

I respectfully disagree.  Numerous defendants have been convicted under Section 750.83 for attempted batteries that, despite being intended to kill the victim, did not result in any physical injury.  *See, e.g.*, *People v. Perdue*, No. 275838, 2008 WL 723963, at *1–2 (Mich. Ct.

App. Mar. 18, 2008) (affirming a conviction under Section 750.83 where the "defendant pointed the gun at his first victim's head and pulled the trigger, and, but for the gun jamming, [the] defendant would have killed this victim"); *People v. Davis*, 549 N.W.2d 1, 4, 6 (Mich. Ct. App. 1996) (affirming a conviction under Section 750.83 where the defendant pointed a gun at the victim and "warned him not to come any closer or he would kill him, and pulled the trigger several times (but no bullets fired)"); *cf. People v. Burdin*, 430 N.W.2d 772, 774-75 (Mich. Ct. App. 1988) (holding that the trial court abused its discretion by dismissing an assault-with-intent-to-commit-murder charge where the defendant fired shots at but did not hit a police officer). Because an individual can intend his attempted battery to kill a victim, even if the attempted battery misses its mark or otherwise fails, the narrow interpretation of Section 750.83's intent-to-kill element is fully consistent with the caselaw holding that a physical injury is not a prerequisite for a conviction under the statute.

The narrower interpretation also leaves room for assault-with-intent-to-commit-murder convictions based on apprehension-type assaults. In *People v. Sheppard*, Nos. 305240, 305244, 305273, 2012 WL 3537118 (Mich. Ct. App. Aug. 16, 2012), for example, the Michigan Court of Appeals upheld an assault-with-intent-to-commit-murder conviction where the defendant broke into the victim's house; attempted, while holding a knife, to force his way into the victim's barricaded bedroom; and verbally threatened to kill her. *Id.* at *2–3. But because the victim fortunately climbed out of her window and called the police before the defendant breached the bedroom door, the defendant did not actually attempt a battery. *See id.* The court nevertheless held that Section 750.83's elements were satisfied because the "[d]efendant placed the victim in reasonable apprehension of an immediate battery" and because his "statements that he intended to kill the victim demonstrate the requisite intent to commit murder." *Id.* at *3. And because the defendant was holding a knife, a reasonable jury could have concluded that the barricaded bedroom door was the only thing that prevented the defendant's apprehension-type assault from evolving into an attempted or consummated battery intended to kill the victim.

The apprehension-type assault in *Sheppard* is materially different from the assaults that Thomas and Davidson committed because the record in this case bears out that, of all of the assaults committed, only the nonlethal acts of rope-tying, pistol-whipping, and kicking evolved

from apprehension-type assaults into attempted or consummated batteries. By contrast, a reasonable jury could infer that Sheppard intended his apprehension-type assault to immediately evolve into an attempted or consummated battery intended to kill the victim, even though the barricaded door halted that evolution.

The upshot is that the Michigan Court of Appeals neither explicitly nor implicitly held in the case before us that Section 750.83's intent element can be satisfied by an intent to kill at some point in the near future, but not by means of the very assault in question. By all appearances, the court instead held that a rational juror could have found that either Thomas or Davidson intended to kill Harrison by means of the assaults that they committed against him. But a holding premised on such a conclusion, which is not supported by the record, would have been an unreasonable application of the *Jackson* standard. The State, quite tellingly, acknowledged in its brief that the Michigan Court of Appeals might have been unreasonable in affirming Thomas's conviction under a theory of principal liability, even though the evidence was equally sufficient to convict him as a principal or as an accomplice under the broad interpretation of the intent-to-kill element. This leads us to the question of whether the majority's interpretation of Section 750.83 is a tenable reading of the intent-to-kill element under the Michigan courts' existing caselaw.

## C. *Estelle v. McGuire* and its progeny are inapplicable to this case.

As the basis for its unwillingness to confirm the viability of its broad interpretation of Section 750.83's intent-to-kill element, the majority cites *Estelle v. McGuire*, 502 U.S. 62 (1991). Maj. Op. 8. *McGuire* holds that "federal habeas corpus relief does not lie for errors of state law." 502 U.S. at 67 (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). Taken at face value, that maxim might appear to bar habeas courts from engaging in any analysis whatsoever of state law, no matter how essential to the adjudication of a habeas petitioner's federal constitutional rights. Placed in context, however, the statement implies no such blanket prohibition on the analysis of state law.

The decision in *McGuire* goes on to say that "it is not the province of a federal habeas court to *re*examine state-court *determinations* on state-law questions." *Id.* at 67–68 (emphasis

added).  *McGuire* thus forbids federal habeas courts from second-guessing a state court's resolution of a state-law question.  But that is not the type of analysis in which Thomas asks us to engage.  No Michigan court has ever explicitly or implicitly adopted the broad interpretation of Section 750.83's intent-to-kill element, so such an interpretation is not rooted in a determination that this court could reexamine, even if it had the authority to do so.  Rather, the broad interpretation is the majority's own after-the-fact explanation for the Michigan Court of Appeals's affirmance of Thomas's conviction.  Thomas urges us to analyze Michigan law only for the limited purpose of confirming or dispelling the majority's explanation.  *McGuire* does not prohibit such an analysis.

To further illustrate the point, the petitioner in *McGuire* argued that the state trial court violated his due-process rights by admitting expert testimony about the victim's prior injuries in order to prove that she suffered from "battered child syndrome."  *Id.* at 68.  Because "California law allows the prosecution to introduce expert testimony and evidence related to prior injuries in order to prove 'battered child syndrome,'" and because that evidence was probative of the petitioner's mental state, the Supreme Court found no due-process violation.  *Id.* at 68–70.  A clear determination of the key issue by the state court thus bound the *McGuire* Court in its evaluation of the petitioner's claim.

To the same effect is the decision in *Bradshaw v. Richey*, 546 U.S. 74 (2005) (per curiam), a progeny of *McGuire* upon which the majority similarly relies.  Maj. Op. 7–8 nn. 1, 3.  The dispositive issue in that case was whether the doctrine of transferred intent applies in the context of Ohio's aggravated-felony-murder law.  *Richey*, 546 U.S. at 75.  During the petitioner's direct appeal in that case, the Ohio Supreme Court answered the key question in the affirmative, albeit in dictum.  *State v. Richey*, 595 N.E.2d 915, 925 (1992).  This court, however, rejected the Ohio Supreme Court's analysis, which it felt free to disregard as nonbinding and at odds with other Ohio court precedent.  *Richey v. Mitchell*, 395 F.3d 660, 676–78 (6th Cir. 2005), *vacated sub nom. Bradshaw v. Richey*, 546 U.S. 74 (2005).  Based on its own analysis of Ohio law, this court then granted habeas relief.  *Id.* at 688.

But the Supreme Court, relying on *McGuire*, vacated this court's judgment in *Richey*, holding that even though the Ohio Supreme Court's dictum was perhaps aberrant, "a state court's

interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Richey*, 546 U.S. at 76–78. This court accordingly erred in *Richey* by failing to adhere to the Ohio Supreme Court's nonprecedential and potentially erroneous analysis of a case-determinative state-law question. As in *McGuire*, but unlike here, a determination by the state court foreclosed further analysis by the federal courts.

An analysis of an unresolved state-law issue, in fact, is often a predicate to the adjudication of a habeas petitioner's federal constitutional rights—particularly in the context of a sufficiency-of-the-evidence review. In *Nash v. Eberlin*, 258 F. App'x 761 (6th Cir. 2007), for example, this court analyzed whether the petitioner could be convicted under Ohio's felonious-assault statute for the unintentional discharge of a weapon that was not aimed at anyone. *Id.* at 765–66. This court answered that question in the negative based on its analysis of Ohio caselaw, concluding that the Ohio Court of Appeals unreasonably applied the *Jackson* standard in affirming the petitioner's conviction. *Id.* at 768.

Much like the majority opinion in this case, Judge Rogers's majority opinion in *Nash* acknowledged that "[t]here are two potential ways to read" the Ohio Court of Appeals's opinion in the petitioner's direct appeal: (1) "as a reinterpretation of Ohio law," or (2) "as a finding that the existing requirements for a felonious assault conviction were satisfied in this case." *Id.* at 767. But the *Nash* court, unlike the majority here, refused to uphold the conviction by furnishing its own after-the-fact explanation for the state court's affirmance where "the Ohio Court of Appeals did not explicitly purport to reinterpret the contours of Ohio law." *Id.* The *Nash* court instead concluded that "we cannot automatically uphold a conviction with insufficient proof of one of the elements on the theory that the state court in the very case has eliminated that element as a requirement" because doing so "would undermine the federal sufficiency-of-proof requirement." *Id.* Habeas relief was therefore granted in *Nash*. *Id.* at 768.

We should be reaching the same conclusion in the present case. Instead, the majority's interpretation of *McGuire* and its progeny undermines federal sufficiency-of-the-evidence review in precisely the manner that the *Nash* court found objectionable.

**D.**     **Michigan law precludes convictions under Section 750.83 absent proof that the defendant intended to kill the victim by means of the assault in question.**

Turning now to the merits of this case, the question becomes whether Michigan law supports the majority's after-the-fact explanation for the decision of the Michigan Court of Appeals to affirm Thomas's conviction.  Michigan courts, to repeat, have defined assault with intent to commit murder as follows:  "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v. Thomas*, No. 270679, 2007 WL 4355431, at *2 (Mich. Ct. App. Dec. 13, 2007) (per curiam) (quoting *People v. Brown*, 703 N.W.2d 230, 236 (Mich. Ct. App. 2005)).  Although inartfully articulated, this definition, read in its entirety, appears to me to preclude a conviction absent proof that the defendant intended to kill the victim by means of the very assault in question.

The third element of the offense presupposes that one of the other two elements is capable of "success[]."  *Id.*  But an "intent" cannot in and of itself be "successful" because it is a state of mind.  An act can succeed or fail, but an "intent" remains the same regardless of the act's outcome.  "Successful," as used in Section 750.83's third element, must therefore refer to the first element—the "assault."

The Merriam-Webster Dictionary defines the word "successful," in part, as "having the desired effect."   Merriam-Webster's Online Dictionary, http://unabridged.merriam-webster.com/unabridged/successful (last visited Aug. 2, 2018).  This leads to the conclusion that Section 750.83's third element must be evaluated in terms of a hypothetical situation in which the assault achieved the defendant's "desired effect."  *See id.*  Put differently, the definition contemplates an assault where the result corresponds with the defendant's "intent."  And the intent at issue in Section 750.83 is an "intent to kill."

An individual can of course commit an assault with objectives in mind other than killing the victim.  As particularly relevant here, a defendant can assault someone with the intent to inflict great bodily harm short of homicide.  Mich. Comp. Laws § 750.84.  An assault can even be intended to merely scare the victim.  *See People v. Davis*, 747 N.W.2d 555, 561 (Mich. Ct. App.), *vacated in part on other grounds*, 755 N.W. 2d 186 (Mich. 2008) (mem.) ("[A]n assault simply means to engage in some form of threatening conduct which is designed to put another

person in fear of being hurt, provided you were close enough to carry it out." (quoting jury instructions)). But the crime of assault with intent to commit murder does not reference either of those two alternative specific intents.

Furthermore, the Michigan courts have described the third element as requiring the absence of circumstances under which a defense to a charge of murder would apply. *See People v. Haggart*, 370 N.W.2d 345, 351 n.1 (Mich. Ct. App. 1985) ("Third, that at the time he committed the assault[,] the defendant intended to kill the complainant, under circumstances that did not justify, excuse[,] or mitigate the crime." (quoting 2 M. Crim. JI 17:2:01 (Supp. 2 1983))). An assault that "succe[eds]" by resulting in something other than a killing could not possibly constitute a murder, regardless of whether a defense applies. *See People v. Fernandez*, 372 N.W.2d 567, 569 (Mich. Ct. App. 1985) (defining both first- and second-degree murder as including a killing). Accordingly, as used by the Michigan courts to define Section 750.83, the word "successful" makes clear that the statute does not apply to an assault committed with an intent to kill at some point in the future by means other than the assault in question.

The weakness of the majority's broad interpretation of Section 750.83's second element is further demonstrated by the factors that juries are instructed to consider in ascertaining the requisite intent for a conviction under the statute. Once more,

> the requisite intent [for conviction under Section 750.83] may be gleaned from the nature of the defendant's acts constituting the assault, the temper or disposition of mind with which they were apparently performed, whether the instrument and means used were naturally adapted to produce death, [the defendant's] conduct and declarations prior to, at the time, and after the assault, and all other circumstances calculated to throw light upon the intention *with which the assault was made*.

*Thomas*, 2007 WL 4355431, at *2 (second alteration in original) (emphasis added) (quoting *Brown*, 703 N.W.2d at 237 n.5).

The final catchall factor shows that each preceding specified factor is meant to reveal whether the defendant committed the assault with the intent to kill by means of the assault itself. *See id.* If the Michigan Court of Appeals did not mean to so cabin the intent inquiry, then the catchall factor would presumably read "and all other circumstances calculated to throw light

upon the defendant's overall intention." The "nature of the defendant's acts constituting the assault," his "temper and disposition of mind" during the assault, and the degree to which "the instrument and means used" to perpetrate the assault "were naturally adapted to produce death" are all specifically tailored to evaluating whether, in committing the assault, the defendant's objective was then and there to kill the victim. *See id.*

As applied to the facts before us, none of the assaults on Harrison indicate an immediate intent to kill him. Thomas, for example, held a gun to Harrison's head and threatened to kill him if he moved or spoke. But Thomas never pulled the trigger. Davidson likewise announced that he was going to shoot Harrison and was heard estimating how many bullets would be required to accomplish the murder. Again, however, Davidson never fired any shots. Even the physical acts of tying up Harrison "execution style," pistol-whipping him, and kicking him several times in the side were not conduct "naturally adapted to produce death." *See id.* The nonlethal nature of the tie-up, pistol-whipping, and kicks is reflected in the fact that Harrison spent only six to eight hours in the hospital following the incident.

Admittedly, "conduct and declarations prior to, at the time, and after the assault" are probative of both the defendant's objective in committing the assault in question and of what he intended to do in the future. *See id.* But this conduct-and-declarations factor does not support the broad interpretation of the intent-to-kill element when it is read in the context of the other specified factors and the catchall factor that specifically references the "intention with which the assault was made." *See id.*

Finally, as Thomas points out, *People v. Cameron*, No. 306391, 2013 WL 951213 (Mich. Ct. App. Feb. 26, 2013), supports his argument that the broad interpretation of Section 750.83's intent-to-kill element is incorrect. In that case, the Michigan Court of Appeals overturned an assault-with-intent-to-commit-murder conviction based on the defendant's nonlethal battering of a victim coupled with a conditional threat that he would return and kill the victim if she did not cease the conduct to which he objected. *Id.* at *3–5. The court determined that the defendant's violent actions were not intended to kill the victim and that his threat of future lethal violence did not satisfy the intent-to-kill element because "it was not proof beyond a reasonable doubt that [the] defendant intended to kill the victim *at the time he committed the assault*." *Id.* at *3

(emphasis added). Although *Cameron* involved a conditional threat to kill in the future, whereas some of the threats here were unconditional, *Cameron*'s reasoning implies a presumption that a defendant convicted under Section 750.83 must have intended his immediate assault to kill the victim.

Because *Cameron* postdates the Michigan Court of Appeals's ruling in Thomas's direct appeal, the majority opines that the decision proves only that the state court potentially "changed Michigan law in 2013" to adopt the narrower interpretation of Section 750.83's intent-to-kill element. Maj. Op. 8 n.3. But *Cameron* cannot have changed Michigan law because the majority has identified no earlier case that explicitly or implicitly adopts the broad interpretation. The case is therefore probative of the Michigan courts' position on the issue both before and during Thomas's direct appeal.

**E.      To the extent that the meaning of Section 750.83's intent-to-kill element remains unclear, we cannot conduct a sufficiency-of-the-evidence review absent further guidance from the Michigan Supreme Court.**

The majority concedes that there are "two ways of interpreting" Section 750.83's intent-to-kill element. Maj. Op. 8. "Either Michigan law does not require proof . . . that the defendant intended to kill the victim *by means of* the assault in question, or Michigan law is unclear or unsettled on this point." *Id.* (emphasis in original). This is an acknowledgement that Michigan law might indeed require proof that the defendant intended to kill the victim by means of the assault in question. There thus exists a substantial chance (in my view, an overwhelming chance) that Thomas was convicted of a crime that he did not commit. The imprisonment of a defendant under such uncertain circumstances most certainly represents an "extreme malfunction[]" of Michigan's criminal justice system. *See Harrington v. Richter*, 562 U.S. 86, 102 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring)).

Under these circumstances, federal courts possess a mechanism to resolve a case-determinative question of state law where we lack adequate guidance from that state's courts on the matter. The *Federal Habeas Manual* notes that, where state law so permits, federal habeas courts may "certify important and case-determinate questions of state law to the state's highest court." Brian R. Means, *Federal Habeas Manual* § 10:26 (2017). The Michigan

Supreme Court authorizes federal courts to certify "a question that Michigan Law may resolve and that is not controlled by Michigan Supreme Court precedent." Mich. Ct. R. 7.308(A)(2). If, as the majority concedes, the Michigan courts have provided no guidance from which we can ascertain the viability of the majority's own broad interpretation of Section 750.83's intent-to-kill element, then we should certify the question to the Michigan Supreme Court. *See Duffy v. Foltz*, 804 F.2d 50, 53–54 (6th Cir. 1986) (noting the court's prior certification to the Michigan Supreme Court regarding the question of whether sanity is an element of the crimes of rape and kidnapping).

If the broad interpretation of Section 750.83's intent-to-kill element is the correct one, then I would agree with my colleagues that the decision of the Michigan Court of Appeals was not unreasonable in affirming Thomas's conviction. By the same token, I believe that my colleagues would agree with me that the state court's decision was unreasonable if the narrower interpretation governs. Certification would remove any lingering uncertainty over whether Thomas was convicted of a crime that he did not commit (assuming, of course, that the Michigan Supreme Court grants review of the question). Moreover, the procedure respects principles of comity and federalism and would steer clear of *McGuire*'s prohibition on using habeas review to correct errors of state law by giving the Michigan Supreme Court the opportunity to resolve the matter in the first instance. The majority offers no explanation for why it is content to accept a very substantial chance of a wrongful conviction when a solution exists that is perfectly tailored to our predicament.

**F.      If Thomas's assault-with-intent-to-commit-murder conviction were vacated, he could be resentenced for the lesser-included offense of assault with intent to do great bodily harm less than murder.**

If this court were to issue the writ in this case, Thomas would not go unpunished for the other serious crimes that he committed in 2005. The jury also convicted Thomas of (1) first-degree home invasion, (2) felonious assault, (3) possession of a firearm by a felon, and (4) possession of a firearm in the commission of a felony. Those other convictions account for 28 years of his minimum sentence of 78 years. Moreover, the jury was charged on the crime of assault with intent to commit great bodily harm less than murder, *see* Mich. Comp. Laws § 750.84, which is a lesser-included offense of assault with intent to commit murder.

I believe that a reasonable factfinder could readily find that Thomas was guilty of aiding and abetting the commission of assault with intent to commit great bodily harm less than murder based on Davidson's kicking and pistol-whipping Harrison. *See* Maj. Op. 3. We could therefore issue the writ without prejudice to the State seeking an entry of conviction for the lesser-included offense, which carries a maximum sentence of ten years. Mich. Comp. Laws § 750.84(1).

**CONCLUSION**

Thomas committed a number of heinous crimes during the 2005 home invasion that he perpetrated with Davidson. But under a proper interpretation of Michigan law, I do not believe that assault with intent to commit murder was one of them. The majority denies habeas relief based not on deference to the Michigan courts' interpretation of the crime at issue, but based on its own after-the-fact explanation for the Michigan Court of Appeals's affirmance of Thomas's conviction. Because I believe that this approach is contrary to the proper use of our habeas power in the sufficiency-of-the-evidence context, I respectfully dissent.