NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0503n.06

Case No. 20-1496

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Nov 03, 2021
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| TAVARES BROOKS, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| RANDEE REWERTS, Warden, | ) | MICHIGAN |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |

Before: SILER, KETHLEDGE, and BUSH, Circuit Judges.

SILER, Circuit Judge. A Michigan jury convicted Tavares Brooks of several crimes, including first-degree premeditated murder. Brooks unsuccessfully appealed his convictions to the Michigan Court of Appeals. After the Michigan Supreme Court declined to review the Court of Appeals' decision, Brooks filed a 28 U.S.C. § 2254 petition for a writ of habeas corpus in the United States District Court for the Eastern District of Michigan.

The district court rejected each of Brooks's claims for relief. It then certified a single question for appeal: Whether constitutionally sufficient evidence supported the conviction for first-degree premeditated murder. After affording "due respect to the role of the jury and the state courts of [Michigan]," *Coleman v. Johnson*, 566 U.S. 650, 651 (2012), we affirm.

I.

In October 2012, Dion Jacobs drove to a grocery store near his home in Saginaw, Michigan. After shopping, he drove home and carried inside an armload of groceries. When he returned to his vehicle for a second armload, a gunman opened fire and shot him six times. Jacobs's mother and girlfriend heard the gunshots. Both watched as Jacobs fell to the ground, covered in blood and bleeding from a large chest wound. His mother hurried to his side and asked him who did it—who shot him. Twice she asked and twice he answered: "TJ." Jacobs died minutes after naming the shooter.

According to Detective Joseph Griggs of the Saginaw Police Department, investigators quickly trained their attention on Tavares Jamele Brooks. Brooks drew suspicion for three reasons: (1) his nickname was "TJ," (2) he lived on the same street as Jacobs, and (3) police had learned about a recent "incident" between Brooks, Jacobs, and Aaron Johnson, a self-described "best friend" of Jacobs. The incident happened less than a week before Jacobs's murder. In short, Brooks owed a financial debt to Johnson, and Johnson told Brooks he could settle the debt with one ounce of marijuana instead of money. But when Brooks did not give him the ounce, Johnson came up with a new plan. Brooks would give 15 ounces of marijuana to Johnson, Johnson would take the marijuana to a medical-marijuana dispensary, and there he would exchange it for cash. Johnson told Brooks that once he had the proceeds, they would "go from there."

Brooks agreed to the plan. So Brooks and Johnson met on October 5, 2012, Brooks handed Johnson fifteen ounces of marijuana, and together they drove to a marijuana dispensary in Bay City, Michigan. Johnson walked the marijuana inside the dispensary. But instead of following through with the plan and exchanging the marijuana for money, he snuck out the dispensary's back

door, got in a car with Jacobs, and fled to his girlfriend's house in Saginaw. This left Brooks with no marijuana and no share of the proceeds.

About an hour later, Johnson and Jacobs "heard somebody beating at the door" of Johnson's girlfriend's house. And when they heard a familiar voice outside the front door, both concluded that Brooks had come to confront them about the stolen marijuana. Immediately recognizing the "problem" they'd created by stealing a large quantity of drugs from Brooks, Johnson and Jacobs hid in the basement until Brooks gave up and left the property.

Over the next couple of days, Johnson posted two pictures on Instagram. The first picture showed Johnson lying in a hospital bed, recovering from a pre-planned surgery; the second showed "a pack of cigarillos and some marijuana." An Instagram user named "Stack A Grip" commented on both photographs. On the first, Stack A Grip wrote, "Bitch, you should have been dead." And on the second Stack A Grip wrote, "Yeah, bitch, smoke good but it's going to cost you." "Stack A Grip" is, at least according to Johnson, a name (or "handle") used by Brooks on social media.

Brooks was tried for homicide. At trial, Jacobs's mother testified about her son's dying declaration—his claim that "TJ" shot him. Johnson testified that "TJ," like "Stack A Grip," is an alias used by Brooks. He also testified about the scheme he and Jacobs developed to steal marijuana from Brooks, the post-scheme messages from "Stack A Grip," and the proximity of Brooks's house to the scene of the crime.

The jury found Brooks guilty of first-degree premeditated murder, in violation of Mich. Comp. Laws § 750.316(1)(a), of being a felon in possession of a firearm, in violation of Mich. Comp. Laws § 750.224f, of carrying a dangerous weapon with unlawful intent, in violation of Mich. Comp. Laws § 750.226, and three counts of possessing a firearm during the commission of a felony, in violation of Mich. Comp. Laws § 750.227b(1). The trial court sentenced Brooks to

life imprisonment without the possibility of parole for the murder conviction, 60 to 120 months imprisonment for the felon-in-possession and carrying-a-dangerous-weapon convictions, and concurrent two-year prison terms for each of the felony-firearm convictions. The Michigan Court of Appeals affirmed the trial court, *People v. Brooks*, No. 318995, 2015 WL 1314407 (Mich. Ct. App. March 24, 2015) (per curiam), and the Michigan Supreme Court declined to exercise discretionary review, *People v. Brooks*, 871 N.W.2d 181 (Mich. 2015).

In 2017, Brooks petitioned the United States District Court for a writ of habeas corpus. *See* 28 U.S.C. § 2254. His petition raised five arguments: (1) the trial court improperly admitted hearsay testimony, (2) ineffective assistance of counsel, (3) Jacob's dying declaration violated the Sixth Amendment's Confrontation Clause, (4) insufficient evidence, and (5) the prosecution failed to investigate, disclose, and analyze material physical evidence. The district court rejected each argument but issued a certificate of appealability only for argument number four: the sufficiency-of-the-evidence argument. Thus, the only question before us is whether constitutionally sufficient evidence supported his conviction for first-degree premeditated murder. Could a rational jury have found, beyond a reasonable doubt, that Brooks was guilty of each element of the crime? *See In re Winship*, 397 U.S. 358, 364 (1970) ("[W]e explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."). The answer is yes.

II.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides the standard of review. AEDPA prohibits federal courts from granting habeas relief "with respect to any claim that was adjudicated on the merits" in a state-court proceeding unless the proceeding:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the . . . proceeding.

28 U.S.C. § 2254(d).

By its terms, review under AEDPA is highly deferential to state courts. *Davis v. Lafler*, 658 F.3d 525, 530 (6th Cir. 2011) (en banc) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)). And when, like here, a habeas petitioner challenges the sufficiency of the evidence used to convict him in a state-court proceeding, the review is doubly deferential. *Id.* at 531. We first defer to the trier of fact. Rather than "reweigh[ing] the evidence, reevaluat[ing] the credibility of witnesses, or substitut[ing] our judgment for that of the jury," we ask "whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime beyond a reasonable doubt." *Thomas v. Stephenson*, 898 F.3d 693, 698 (6th Cir. 2018) (quoting *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009)). If the answer is yes, then the conviction satisfies the demands of the Fourteenth Amendment's Due Process Clause. *See Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979). Second, we defer to the last state court that reviewed (and rejected) the petitioner's sufficiency arguments. *Id.* "[S]o long as fairminded jurists could disagree on the correctness of the state court's decision" to leave a guilty verdict in place, federal habeas relief is inappropriate. *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quotation marks and citation omitted).

The Michigan Court of Appeals was the last state court to review and reject Brooks's sufficiency arguments. So Brooks can prevail only by showing the Michigan Court of Appeals "was unreasonable in *its* conclusion that a rational trier of fact could find [him] guilty [of first-

degree premeditated murder] beyond a reasonable doubt." *Brown*, 567 F.3d at 205. He cannot overcome this heavy burden.

III.

In Michigan, the crime of first-degree premeditated murder has two elements: "(1) the intentional killing of a human (2) with premeditation and deliberation." *People v. Oros*, 917 N.W.2d 559, 565 (Mich. 2018) (quoting *People v. Bennett*, 802 N.W.2d 627 (Mich. 2010)); *see* Mich. Comp. Laws § 750.316(1)(a). Brooks challenges both elements. He claims the prosecution presented insufficient "identity evidence," or evidence linking him to the "intentional killing" at issue; stated differently, he claims no reasonable trier of fact could identify him as Jacobs's murderer. And even if the prosecution presented constitutionally sufficient identity evidence, he argues, no reasonable trier of fact could have concluded that the killing was done with premeditation or deliberation. We take those arguments in turn.

A.

First to the sufficiency of identity evidence presented at Brooks's trial. Proving that the person charged is the person who committed the crime is "always an essential element in a criminal prosecution." *People v. Oliphant*, 250 N.W.2d 443, 449 (Mich. 1976) (citation omitted). Prosecutors can prove identity through direct evidence, circumstantial evidence, or through a combination of the two. *See Stewart v. Wolfenbarger*, 595 F.3d 647, 656 (6th Cir. 2010) ("[A] court may sustain a conviction based upon nothing more than circumstantial evidence.").

In this case, the Michigan Court of Appeals found "more than sufficient evidence" for a reasonable jury to identify Brooks as Jacobs's killer. The prosecution presented both direct and circumstantial evidence linking Brooks to the crime:

First, immediately after being shot Jacobs identified the perpetrator as "TJ." The medical examiner established that Jacobs was shot in the front of his body, indicating that he was in a position to positively identify his assailant. Furthermore, because Jacobs was fatally wounded and actively dying, he had no reason to lie about defendant's identity . . . Jacobs' dying declaration was credible, direct evidence that "TJ" was the shooter.

In addition, the prosecution presented sufficient circumstantial evidence to establish that defendant was the "TJ" Jacobs identified. Johnson testified that he, Jacobs, and the defendant had known each other for 18 years, and that he and Jacobs had always referred to defendant as TJ. He testified that he stole roughly $2,000 of marijuana from defendant, and Jacobs helped him do so, which would explain defendant's motive for killing Jacobs.

. . .

The prosecution sufficiently established that Jacobs identified his killer as "TJ." It also sufficiently established that Jacobs had a previous relationship with defendant, and that he referred to him as "TJ." Finally, the prosecution established that defendant had a motive for killing Jacobs, as Jacobs and Johnson stole $2,000 of marijuana from defendant. Viewed in a light most favorable to the prosecution, these facts were sufficient to establish that defendant killed Jacobs.

*Brooks*, 2015 WL 1314407, at *1–2.

This was not an unreasonable conclusion. Viewing the evidence in the light most favorable to the prosecution, *Thomas*, 898 F.3d at 698, a rational trier of fact might well have identified Brooks as Jacobs's shooter. Several pieces of evidence tied Brooks to the crime. For one, Jacobs twice declared as he was dying that "TJ" was the person who shot him. The jury could have believed his declaration, could have believed Johnson's testimony (i.e., that Brooks commonly uses the nickname "TJ"), and could have then inferred that Brooks was the "TJ" identified by Jacobs. Such an inference would not have been unreasonable, especially since prosecutors presented evidence suggesting Brooks had a motive to harm Jacobs—i.e., as retribution for the marijuana that Jacobs and Johnson allegedly stole six days before the shooting. Furthermore, prosecutors supplemented Jacobs's dying declaration and the motive evidence with (A) threatening social media posts from Brooks in the days before the shooting and (B) evidence of Brooks's nearby residence.

Brooks responds three ways. First, he challenges the credibility of Johnson and Jacobs's mother by pointing out perceived inaccuracies in their testimony and pre-trial statements. But witness-credibility arguments are not appropriate grounds for § 2254 relief. It is, after all, "the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003). Second, he calls Jacobs's dying declaration "inherently unreliable" because "the shooting occurred at night while it was raining, . . . making it difficult for [Jacobs] to identify anyone." Rain and darkness aside, we find nothing "inherently unreliable" about Jacobs's dying declaration. *Cf. Woods v. Cook*, 960 F.3d 295, 300 (6th Cir. 2020) (the dying-declaration exception to Federal Rule of Evidence 802 "is premised on the understanding that the dying usually do not spend their last breaths lying"). At trial the jury considered the circumstances surrounding Jacobs's dying declaration; Brooks's attorney cross-examined Jacobs's mother, and his closing statement referenced the darkness, the rain, and the natural difficulties a dying man may have in identifying his killer. Brooks now asks us to "reweigh the evidence," find Jacobs's declaration implausible, "substitute our judgment for that of the jury," and then dismiss Jacobs's dying declaration out of hand. *But see Thomas*, 898 F.3d at 698. We reject his invitation.

Third and finally, Brooks says investigators found no "bloody clothing, hairs, DNA, or fingerprints" tying him to the crime. But physical evidence is not a prerequisite for establishing identity. *See O'Hara v. Brigano*, 499 F.3d 492, 500 (6th Cir. 2007).

The question at this stage is not whether we "believe[] the state court's determination . . . was incorrect but whether [it] was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). The Michigan Court of Appeals determined that a rational jury could have identified Brooks as

the "TJ" who shot and killed Jacobs, and, considering the evidence presented by prosecutors at trial, this determination was far from unreasonable.

B.

Brooks also claims the prosecution presented insufficient evidence of premeditation and deliberation. A trier of fact can infer premeditation and deliberation "from the circumstances surrounding [a] killing," including the prior relationship of the parties, the defendant's actions before the killing, the circumstances of the killing itself, and the defendant's conduct after the homicide. *People v. Anderson*, 531 N.W.2d 780, 786 (Mich. 1995) (citing *People v. Schollaert*, 486 N.W.2d 312 (Mich. 1992)).

The circumstances surrounding Jacob's murder support the jury's finding of premeditation and deliberation. Given the lack of evidence suggesting Jacobs resisted or threatened his killer, a rational trier of fact could have concluded that Jacobs's killing was a nighttime ambush committed without provocation or struggle, not a killing "committed in a frenzy or heat of passion." *People v. Hoffmeister*, 229 N.W.2d 305, 308 (Mich. 1975). And assuming Brooks killed Jacobs in retaliation for the marijuana theft on October 5—which a reasonable jury might have concluded, particularly in light of the post-theft social media messages—then he had "sufficient time . . . to take a second look at his actions." *People v. Gonzalez*, 444 N.W.2d 228, 230 (Mich. 1989). The circumstances of the crime, including the timing and methodology, suggest Brooks "measured and evaluated his choices before proceeding to kill" Jacobs. *Oros*, 917 N.W.2d at 568.

**AFFIRMED**.