RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0368p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

COREY LERON THOMPSON,

        *Petitioner-Appellant*,

*v.*

GREGORY SKIPPER, Warden,

        *Respondent-Appellee*.

No. 19-1779

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:16-cv-14353—Denise Page Hood, Chief District Judge.

Argued:  October 22, 2020

Decided and Filed:  November 25, 2020

Before:  COOK, BUSH, and NALBANDIAN, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:**  David R. Fox, JONES DAY, Boston, Massachusetts, for Appellant.  John S. Pallas, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee. **ON BRIEF:**  David R. Fox, JONES DAY, Boston, Massachusetts, for Appellant.  Daniel Ping, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee.

     COOK, J., delivered the opinion of the court in which BUSH, J., joined. NALBANDIAN, J. (pp. 10–12), delivered a separate opinion concurring in the result.

———————————

**OPINION**

———————————

COOK, Circuit Judge. Corey Leron Thompson appeals the district court's denial of his habeas petition under 28 U.S.C. § 2254, claiming that his Michigan jury lacked sufficient evidence to find that he constructively possessed a gun. Because Thompson fails to surmount the two levels of deference that steer our review, we AFFIRM.

**I.**

In 2013, Thompson sold heroin to a confidential informant in two controlled buys. After the second controlled buy, police obtained a warrant to search the apartment where the transactions took place. On their way to execute the warrant, police encountered Thompson and a passenger driving away from the apartment in an SUV. The police pulled the vehicle over and arrested Thompson.

During their initial search of the vehicle, officers found multiple bags of heroin and cocaine in the center console and sunroof. Officers later discovered a loaded handgun secreted under the back seat's folding mechanism. The police did not find Thompson's fingerprints on the gun.

Thompson proceeded to trial, where a Michigan jury convicted him of three drug crimes and four gun crimes. Thompson challenged the gun convictions on appeal, arguing that his mere proximity to the gun in the SUV failed to provide sufficient evidence of possession. The Michigan Court of Appeals rejected Thompson's claim on the merits, concluding that a rational jury could infer he constructively possessed the gun. As the court explained, the evidence demonstrated that Thompson "was a drug dealer and that he had sold drugs on the night the gun was found in the vehicle he was driving." (R. 9-9 at 841.) Citing the "well-known relationship between drug dealing and the use of firearms as protection," the court found that the gun's proximity to both Thompson and the drugs sufficed to create a jury question as to Thompson's possession. (*Id.*) The Michigan Supreme Court denied review.

This habeas petition followed, with Thompson renewing his insufficient-evidence claim plus bringing various others including ineffective assistance and the denial of an impartial jury. In denying the insufficient-evidence claim, the district court reasoned "[t]he jury could have inferred that [Thompson] knew about the gun, had access to it, and also had the power and intent to control the gun to protect himself, if the need arose, before, during, and after his drug transactions." (R. 12 at 1145.) Acknowledging that "there was no evidence that [Thompson] actually used or even handled the gun," the court noted that: (1) "it was close to both him and the controlled substances at the time of his arrest" and (2) "the informant saw a gun in the back of the vehicle when she went with [Thompson] to make a drug delivery about a week earlier." (*Id.* at 1144–45.) The court denied the petition in full and granted a certificate of appealability on the insufficient-evidence claim only.

## II.

We review the denial of a habeas petition de novo. *Allen v. Mitchell*, 953 F.3d 858, 863 (6th Cir. 2020). To evaluate a sufficiency-of-the-evidence claim, we consider "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* (quoting *Jackson*, 443 U.S. at 324).

Thompson's gun offenses required proof that he possessed a firearm. Mich. Comp. Laws §§ 750.224f(1), 750.227b. Under Michigan law, possession may be either actual or constructive. *People v. Hill*, 446 N.W.2d 140, 143 (Mich. 1989). A person constructively possesses a firearm when he "knowingly has the power and the intention at a given time to exercise dominion or control over [it]." *Id.* (citation omitted).

Because the Michigan Court of Appeals rejected Thompson's claim on the merits, we accord deference under the Antiterrorism and Effective Death Penalty Act of 1996. 28 U.S.C. § 2254(d). As relevant here, habeas relief is available only if the Michigan Court of Appeals's decision "involved an unreasonable application of" *Jackson*'s standard for insufficient-evidence

claims. § 2254(d)(1). The state court's application "must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *Nagy*, 962 F.3d at 199 (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014)). In other words, "relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *Woodall*, 572 U.S. at 427 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

Together, *Jackson* and AEDPA's two layers of deference dictate that "a federal court's 'review of a state-court conviction for sufficiency of the evidence is very limited.'" *Tackett v. Trierweiler*, 956 F.3d 358, 367 (6th Cir. 2020) (quoting *Thomas v. Stephenson*, 898 F.3d 693, 698 (6th Cir. 2018)). "First, on direct appeal, it is the responsibility of the jury—not the court— to decide what conclusions should be drawn from evidence admitted at trial." *Id.* (quoting *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam)). "And second, on habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court." *Id.* (quoting *Coleman*, 566 U.S. at 651). To prevail, Thompson must overcome both of these layers of deference.

## III.

Proximity alone cannot establish constructive possession of a gun. *People v. Wolfe*, 489 N.W.2d 748, 757 (Mich. 1992); *accord United States v. Campbell*, 549 F.3d 364, 374 (6th Cir. 2008). But a rational jury can convict a defendant of constructive possession based on "proximity to the article together with indicia of control." *Hill*, 446 N.W.2d at 143; *see Campbell*, 549 F.3d at 374 ("[E]vidence of some other factor—including connection with a gun, proof of motive, a gesture implying control, evasive conduct, or a statement indicating involvement in an enterprise—coupled with proximity may suffice." (citation omitted)). Here, the parties dispute whether such an "additional connection" supported Thompson's convictions for constructively possessing the nearby gun. *Wolfe*, 489 N.W.2d at 754.

## A.

In denying Thompson's petition, the district court relied on the testimony of an informant who "saw a gun in the back of the vehicle when she went with [Thompson] to make a drug

delivery about a week earlier." The Michigan Court of Appeals, however, declined to rely on this testimony when rejecting Thompson's insufficient-evidence claim. On appeal, Thompson contends that the district court's consideration of the informant's testimony warrants a remand because, under AEDPA, a habeas court must "train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims." *Wilson v. Sellers*, 138 S. Ct. 1188, 1191–92 (2018) (citation omitted).

Hewing to *Wilson*, this court recently explained that AEDPA requires a habeas court "to review the actual grounds on which the state court relied." *Coleman v. Bradshaw*, 974 F.3d 710, 719 (6th Cir. 2020) (citing *Wilson*, 138 S. Ct. at 1192).[1] As the State notes, however, the district court's legal reasoning "is . . . not strictly relevant." (Appellee Br. at 15.) On de novo review, this court independently "reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Wilson*, 138 S. Ct. at 1192.

Thompson resists this conclusion by emphasizing "the parties' right under our judicial system to have the issues in their suit considered by both a district judge and an appellate court." (Reply Br. at 7 (quoting *Friendly Farms v. Reliance Ins. Co.*, 79 F.3d 541, 545 (6th Cir. 1996)).) But whatever the scope of that right, this court "may affirm on any grounds . . . even if different from the reasons of the district court." *Hogan v. Jacobson*, 823 F.3d 872, 884 n.2 (6th Cir. 2016) (citation omitted); *see also, e.g.*, *Harris v. Stovall*, 212 F.3d 940, 943–45 (6th Cir. 2000) (affirming despite finding that "the district court erroneously applied the AEDPA"). As a result, we need not remand if the Michigan Court of Appeals's "specific reasons" for rejecting Thompson's *Jackson* claim "are reasonable." *Wilson*, 138 S. Ct. at 1192.

---

[1]In the wake of *Wilson*, courts have grappled with whether AEDPA deference extends only to the reasons given by a state court (when they exist), or instead applies to other reasons that support a state court's decision. *Compare, e.g.*, *Ford v. Peery*, 976 F.3d 1032, 1044 (9th Cir. 2020) ("[I]f a state court articulates its reasoning, it is only that reasoning that receives deference."), *and Winfield v. Dorethy*, 956 F.3d 442, 454 (7th Cir. 2020) ("Having found the state court's 'specific reasons' for denying relief, the next question is whether that explanation was reasonable thereby requiring our deference." (quoting *Wilson*, 138 S. Ct. at 1192)), *with Sheppard v. Davis*, 967 F.3d 458, 467 n.5 (5th Cir. 2020) ("We observe, without deciding, that it is far from certain that *Wilson* overruled *sub silentio* the position—held by most of the courts of appeals—that a habeas court must defer to a state court's ultimate *ruling* rather than to its specific *reasoning*.").

**B.**

In concluding that sufficient evidence supported Thompson's gun convictions, the Michigan Court of Appeals cited evidence that he "was a drug dealer and that he had sold drugs on the night the gun was found in the vehicle he was driving." (R. 9-9 at 841.) Relying on the "well-known relationship between drug dealing and the use of firearms as protection," the court explained that Thompson's presence near the gun *and* the drugs provided enough evidence for the jury to convict. (*Id.*; *see People v. LaFountain*, 844 N.W.2d 5, 6 (Mich. 2014).) It reasonably determined that this drug-dealing evidence provided an "additional connection" between Thompson's proximity to the gun and his constructive possession of it. *Wolfe*, 489 N.W.2d at 754.

Thompson claims that the drug-dealing evidence cannot support his convictions because *LaFountain* referred to the relationship between drugs and guns "after constructive possession had already been established." (Appellant Br. at 21.) That relationship, Thompson notes, supported *LaFountain*'s later holding that the defendant's methamphetamine operation "involved" his possession of the gun. 844 N.W.2d at 6. As an initial matter, Thompson fails to explain why a jury can make the "perfectly reasonable" inference that drug dealing "involves" guns yet have "no basis" to infer constructive possession of a gun based on nearby evidence of drug dealing. (Appellant Br. at 21–22.) Both inferences rest on the same premise: "Guns are 'tools of the trade' in drug transactions." *United States v. Burns*, 498 F.3d 578, 580 (6th Cir. 2007) (quoting *United States v. Hardin*, 248 F.3d 489, 499 (6th Cir. 2001)). Regardless, as the State points out, inferences built on the relationship between drug dealing and guns hardly end with *LaFountain*.

In *People v. Rapley*, for example, the Michigan Supreme Court reinstated convictions under the same gun possession statutes as Thompson's convictions. 767 N.W.2d 444, 444–45 (Mich. 2009). The court explained:

> Even though the firearm was not in plain view in this case, the jury could reasonably have inferred that the defendant was in knowing possession of the firearm based on its proximity to a quantity of controlled substances that the defendant was intending to deliver, the defendant's proximity to both the weapon

and the controlled substances, and the well-known relationship between drug dealing and the use of firearms as protection.

*Id.* The State correctly suggests that "*Rapley* is directly on point." (Appellee Br. at 29.) Thompson drove the vehicle with several small bags of heroin and cocaine. He positioned himself close to both the drugs (in the console beside him and the sunroof above him) and the gun (under the seat behind him). And his proximity to both "permitted the inference that the gun was part of the defendant's drug trade and, therefore, within his knowledge and control." (*Id.*)

Thompson musters two unpersuasive responses to *Rapley*. He first wishes to distinguish *Rapley* on its facts by explaining that the gun in that case—hidden under the bed on which the defendant sat—"was 'easily reachable.'" (Reply Br. at 14 (quoting *People v. Rapley*, 2009 WL 691871, at *3 (Mich. Ct. App. Mar. 17, 2009)).) Here, Thompson notes, the police found the gun under the seat behind the driver's seat, "and it was so well-hidden that the police did not find it in their initial search." (*Id.*) But Thompson forgets that under AEDPA, *Jackson*'s "exceedingly general" standard affords state courts "'more leeway . . . in reaching outcomes in case-by-case determinations.'" *Davis v. Lafler*, 658 F.3d 525, 535 (6th Cir. 2011) (quoting *Renico v. Lett*, 559 U.S. 766, 767 (2010)). Quibbling over the location of the gun in *Rapley*— slightly closer and more reachable—fails to demonstrate an unreasonable application of *Jackson*. Besides, Michigan does not accede to such a cramped understanding of constructive possession. *See People v. Johnson*, 808 N.W.2d 815, 818 (Mich. Ct. App. 2011) (affirming conviction when rifles were "in the vicinity of where Johnson was seated behind the table that contained marijuana").

Thompson next launches an attack on Michigan law itself, touting the truism that "the sufficiency of the evidence under the *Jackson* standard presents a question of federal law." (Reply Br. at 14.) In federal cases, however, this court also relies on evidence of nearby drugs to help establish constructive possession of a firearm. In *United States v. Castano*, for example, we found sufficient evidence of constructive possession where the connection between firearms and drug trafficking "provided a basis for the jury to conclude that [the defendant] had a powerful motive to protect himself and his significant investment in advance of the drug deal." 543 F.3d 826, 838 (6th Cir. 2008); *see also United States v. Douglas*, 371 F. App'x 562, 566–67 (6th Cir.

2010) (finding sufficient evidence of constructive possession where defendant was in close proximity to firearm and admitted "that the multiple pounds of marijuana belonged to him"). Similarly, in *United States v. Greeno* the court upheld an enhancement for constructive possession where "[t]he firearms were found throughout the property in relatively close proximity to drugs and drug paraphernalia." 679 F.3d 510, 515 (6th Cir. 2012); *see also United States v. McFarland*, 766 F. App'x 301, 308 (6th Cir. 2019) (affirming enhancement for constructive possession where "the firearms were found near drugs").

Other circuits take the same approach. *See, e.g.*, *United States v. Webster*, 775 F.3d 897, 906 (7th Cir. 2015); *United States v. Booker*, 436 F.3d 238, 242 (D.C. Cir. 2006); *United States v. Wright*, 932 F.2d 868, 881 (10th Cir. 1991), *overruled on other grounds by United States v. Flowers*, 464 F.3d 1127, 1130 n.1 (10th Cir. 2006); *United States v. Rivera*, 844 F.2d 916, 925–26 (2d Cir. 1988); *United States v. Jackson*, 798 F. App'x 593, 594–95 (11th Cir. 2020). In sum, "[t]he link between guns and drugs is an example of a 'plus factor' that, when 'coupled with proximity,' can support a finding of constructive possession." *United States v. Dorman*, 860 F.3d 675, 682 (D.C. Cir. 2017) (internal quotation marks and alteration omitted) (quoting *Booker*, 436 F.3d at 242). The Michigan Court of Appeals did not unreasonably apply *Jackson* by relying on that plus factor here.

In urging otherwise, Thompson relies on a single habeas case where this court upheld an insufficient-evidence claim: *Parker v. Renico*, 506 F.3d 444 (6th Cir. 2007). There, the court affirmed the grant of habeas relief after concluding that the evidence of constructive possession beyond Parker's proximity to the gun was "speculative at best." *Id.* at 450.

Thompson insists that *Parker* "applies *a fortiori* here" because "Michigan offered even less evidence than it offered in *Parker*." (Appellant Br. at 25.) He claims that in contrast to *Parker*, here the evidence showed no flight, no attempt to dispose of the gun, no gun in plain sight, and no link between the gun and Thompson as opposed to another passenger. But those factors did not provide support for the verdict in *Parker*, either: They had "exceedingly low" probative value, depended on the state court's erroneous recounting of the facts, constituted "proximity by another name," and were "exceedingly speculative." 506 F.3d at 450–52. More importantly, Thompson omits the drug evidence that exists here but not in *Parker*. *Parker* says

nothing about whether evidence of drug dealing can supplement proximity to support a conviction for constructive possession.

Thompson's reliance on federal cases reversing convictions for constructive possession fares no better. Only *United States v. Bailey* involved constructive possession in the context of drug trafficking charges. 553 F.3d 940 (6th Cir. 2009). There, this court concluded that Bailey's flight from police failed to support his constructive possession of a gun because he "might well have taken this action in an effort to evade detection of the two bags of crack cocaine found in his pants." *Id.* at 946. The court did not consider whether Bailey's drug trafficking activity itself supported the verdict. *See id.* at 945–46. In any event, AEDPA did not constrain the court in *Bailey*. Under AEDPA, *Bailey* represents—at most—a "possibility for fairminded disagreement" with the Michigan Court of Appeals's conclusion here. *Woodall*, 572 U.S. at 420 (quoting *Richter*, 562 U.S. at 103).

Finally, the parties underappreciate another fact relied upon by the Michigan Court of Appeals: Thompson "was the driver of the vehicle." (R. 9-9 at 840; *see id.* at 841.) Like proximity, "[t]he mere fact that [a defendant] was driving the car in which the police found the firearm is not enough" to show constructive possession. *Bailey*, 553 F.3d at 947. It does, however, provide "support[]" for that conclusion. *Id.* (quoting *United States v. Newsom*, 452 F.3d 593, 609 (6th Cir. 2006) (emphasis omitted)); *see, e.g.*, *United States v. Player*, 201 F. App'x 331, 335 (6th Cir. 2006); *United States v. Clark*, 56 F. App'x 217, 219 (6th Cir. 2003). This remains true even though a passenger accompanied Thompson in the SUV. *See, e.g.*, *United States v. Walker*, 545 F.3d 1081, 1088 (D.C. Cir. 2008) (explaining that the driver "is held to a higher level of accountability for [the vehicle's] contents" (citation omitted)). When combined with Thompson's proximity to the gun and the evidence of his drug dealing, the Michigan Court of Appeals provided more than enough support for a fair-minded jurist to conclude that a rational jury could convict him of constructively possessing the gun.

## IV.

Finding that Thompson fails to overcome the deference we owe to the jury and state court, we AFFIRM.

_____

**CONCURRENCE**

_____

NALBANDIAN, Circuit Judge, concurring.  I concur in the result and agree that we should apply Antiterrorism and Effective Death Penalty Act (AEDPA) deference and affirm. I write separately to emphasize that the trial court did not err in considering the additional evidence not mentioned by the Michigan court of appeal.  Federal courts have never been required to confine their habeas analysis to the exact reasoning that the state court wrote, and neither *Wilson v. Sellers*, 138 S. Ct. 1188 (2018), nor *Coleman v. Bradshaw*, 974 F.3d 710 (6th Cir. 2020), compels us to change our analysis.

When a state court has already ruled on the merits of a habeas claim, AEDPA only allows federal courts to review when

> the adjudication of the claim . . . resulted in a *decision* that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or . . . resulted in a *decision* that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2) (emphasis added).  For this reason, the Supreme Court in *Richter* noted that a state court's habeas reasoning does not define the federal court's review.  Even without an explanation from the state court, "the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."  *Harrington v. Richter*, 562 U.S. 86, 98 (2011).  We echoed this premise in *Holland v. Rivard*: "AEDPA deference applies to the state court's *decision,* not its reasoning."  800 F.3d 224, 236 (6th Cir. 2015).

The Supreme Court pointed out in *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991), that there is at least one situation when the state court's reasoning matters: "independent and adequate state grounds." *Coleman v. Thompson,* 501 U.S. 722, 738 (1991).  That is, when a state court decides a habeas claim, a federal court has no business reviewing it unless it "fairly appears to rest primarily on federal law or is interwoven with federal law."  *Ylst*, 501 U.S. at 802 (quoting *Coleman*, 501 U.S. at 740 (alterations removed)).  When a state court rejects a claim based on a

state procedural default, the claim is dead for reasons that have nothing to do with federal law. So we don't review.

*Ylst* dealt with the conundrum of determining whether the state's decision depended on state procedure or on federal law when the highest state court of appeals said nothing beyond "affirm," "dismiss," or "deny." *Id*. at 802–03. The Ninth Circuit had treated such a terse decision as if it were a decision on the merits, which would make the lower court's procedure-based rejection "expire" and would revive the substantive federal-law arguments that the petitioner raised. *Id*. at 801. *Ylst* rejected that approach and told federal courts to assume that, if the lower state court leaned on procedural grounds to dismiss, then the appeals court's summary denial affirmed on the same procedural grounds. *Id*. at 806.

*Wilson* took this idea from *Ylst* and transplanted it from determining the *grounds* to determining the *rationale*. That is, instead of "looking through" to the lower state court to decide whether the procedural bar applied, *Wilson* looked through to see what the lower court had to say about the substantive arguments they decided. *Wilson*, 138 S. Ct. at 1193–94. This conclusion was somewhat confusing because, as the dissent pointed out, federal courts have only tangential interest in what the state court said if the decision was justifiable for other reasons. *Id*. at 1197 (Gorsuch, J., dissenting). Indeed, nothing in *Wilson* suggests that federal courts cannot look to any other reason for supporting the state courts decision and applying AEDPA deference. Instead, the *Wilson* Court references and applies *Richter* as authoritative, noting only that it did not decide whether to "look-through" to lower state courts when determining the reasons that the highest state court probably used. *Id*. at 1195. So I conclude that *Wilson* would have us continue to "look at all the arguments presented in state and federal court and examine the state court record." *Id*. at 1204 (Gorsuch, J., dissenting).

At least one other sister circuit has similarly questioned the reach of *Wilson*, doubting that the opinion meant to strike the widespread method of applying AEDPA without evening mentioning the overhaul that would result.[1] Others may not have yet settled the question.[2]

---

[1]*See Sheppard v. Davis*, 967 F.3d 458, 467 n.5 (5th Cir. 2020) ("We observe, without deciding, that it is far from certain that *Wilson* overruled *sub silentio* the position—held by most of the courts of appeals—that a habeas court must defer to a state court's ultimate *ruling* rather than to its specific *reasoning*.").

And others have adopted the broader reading of *Wilson*, as the panel opinion notes.  Maj. Op. 5, n.1.

I don't believe that *Coleman v. Bradshaw* requires us to take on the broad reading of *Wilson* and look only at the specific reasons that the state court gave.  974 F.3d at 719.  In *Coleman*, the state court had reviewed a prisoner's habeas claim regarding post-conviction evidence under *Brady v. Maryland*, 373 U.S. 83 (1963).  At the time, no clearly established Supreme Court precedent applied *Brady* to post-conviction evidence.  So the government argued that the *Coleman* panel should reject the petitioner's argument because the state court "would have been entitled to reject Coleman's *Brady* claim on purely legal grounds."  *Id*. at 718–19.  But the panel analyzed the state court's *Brady* holding anyway, noting that the Ohio courts had applied *Brady*, and "AEDPA requires this court to review the actual grounds on which the state court relied."  *Id*. at 719.

But the panel did not constrain its analysis to the exact reasons that the state court discussed.  For the affidavit in question, the state court gave only one reason to reject the claim: the affidavit lacked credibility.  *Id*. at 718.  But the panel gave three reasons: 1) the affidavit was not *Brady* evidence because the government did not have it before the petitioner did, 2) the affidavit lacked credibility, and 3) the "necessary implication" that Coleman didn't establish that the affidavit's claimed confession actually occurred.  *Id*. at 719.

In sum, the *Coleman* panel never condemned the practice of noting additional facts beyond what the state court mentioned.  Instead, it engaged in the practice.  And the Supreme Court has not clearly overruled our procedure of looking to the state courts' decision rather than only the exact reasoning.  Because the broader reading of *Wilson* conflicts with other Supreme Court authority and casts confusion on the text of AEDPA's focus on the state court "decision," I conclude that the district court did not err in adding a reason to support the district court's grounds for its ruling.

---

[2]*Compare Whatley v. Warden, Georgia Diagnostic & Classification Ctr.*, 927 F.3d 1150, 1182 (11th Cir. 2019) ("Indeed, we are not limited to the reasons the [state] Court gave and instead focus on its 'ultimate conclusion,' . . . ."), *with Hawthorne v. Sec'y, Dep't of Corr.*, 786 F. App'x 896, 899 (11th Cir. 2019) (holding that "the district court erred in denying his *Miranda* claim because the district court failed to apply the 'look-through requirement' articulated by the Supreme Court in *Wilson*.").