NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0016n.06

Case No. 24-1440

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jan 14, 2025
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | ON APPEAL FROM THE |
| Plaintiff - Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| TYRONE LEKESE HOOPER, | ) | O P I N I O N |
| Defendant - Appellant. | ) | |
| | ) | |

Before: McKEAGUE, GRIFFIN, and LARSEN, Circuit Judges.

**McKEAGUE, Circuit Judge.** Tyrone Hooper pleaded guilty to being a felon in possession of firearms and ammunition. At sentencing, the district court applied a four-point enhancement to Hooper's total offense level because he possessed ten firearms. *See* U.S.S.G. § 2K2.1(b)(1)(B). On appeal, Hooper argues that he only possessed six firearms, and the district court should have applied a two-point enhancement instead. *See id.* § 2K2.1(b)(1)(A). Because there is sufficient evidence supporting the district court's conclusion, we **AFFIRM**.

**I.**

Hooper illegally possessed firearms on multiple occasions between June 2022 and May 2023.[1] Some were recovered in his car. Others were identified in photographs online. And two of them were used by infants who accidentally shot themselves.

---

[1] In 2018, Hooper was convicted of possession with intent to distribute marijuana, a felony offense in Michigan. *See* Mich. Comp. Laws § 333.7401(2)(d)(iii).

On June 9, 2022, a two-year-old child was shot in Hooper's apartment. The child's mother, who was in the apartment at the time of the shooting, stated that she saw a gun. After the shooting, a neighbor watched Hooper run out of the building and get into his car. Hooper eventually returned to the apartment, and police officers searched his car. They recovered three Glock 19 9mm pistols.[2]

On June 11, 2022—two days after the child was shot in Hooper's apartment—law enforcement officers pulled over a car driven by "KL." Hooper was the only other occupant of the car. Because KL had an outstanding warrant, the officers took KL into custody and conducted an inventory search of the car. The officers found two handguns under Hooper's seat. When the officers discovered the handguns, Hooper fled the scene on foot.

A few months later, another two-year-old child was shot in Hooper's apartment. In November 2022, Hooper brought the child to an urgent care facility and claimed that the child was shot at a nearby park. But multiple witnesses reported that they heard a gunshot inside Hooper's apartment building. Hooper's neighbor saw him run down the stairs of the building, holding the screaming child. The building manager stated that "the tenants" removed evidence of the shooting—including a handgun—from Hooper's apartment. During a search of the apartment, officers observed a pool of blood, a bullet-sized dent in the living room radiator, and a bullet on the floor nearby. While the officers did not recover a firearm, they found a handgun magazine and several types of ammunition.

Hooper continued to possess firearms in 2023. In February, law enforcement officers stopped Hooper's car for several moving violations. The officers then arrested Hooper because he had an outstanding bench warrant. During a search of his vehicle, officers recovered two loaded firearms: a Baretta APX 9mm pistol and a Glock 42 .380 caliber pistol with a 50-round drum magazine. In May, officers pulled over Hooper again. After observing an open bottle of alcohol

---

[2] A ballistic analysis determined that a bullet recovered in Hooper's apartment was fired from one of the Glock 19s, and there was "strong support" that Mr. Hooper contributed to the DNA profile on another Glock 19.

on the floor, the officers searched the car. They found a loaded Taurus G2C 9mm pistol in the glove box.[3]

Hooper also posted photographs of firearms on Facebook. On October 31, 2022—two days before the second two-year-old child was shot—Hooper posted a photo of (1) a Glock with a drum magazine, and (2) an assault rifle.[4] Hooper captioned the photo: "I'm fast w[ith] both of them."

Hooper was charged with three counts of being a felon in possession of a firearm and one count of being a felon in possession of ammunition. *See* 18 U.S.C. § 922(g)(1). Pursuant to a plea agreement, Hooper pleaded guilty to the ammunition count and one firearms count. Before sentencing, pretrial services recommended that the district court apply a four-point enhancement to Hooper's offense level because he "possessed at least nine firearms." Hooper objected. But at the sentencing hearing, the district court counted ten firearms: (1) three recovered from Hooper's car after the first two-year-old child was shot in June 2022; (2) two found under Hooper's seat during the June 2022 traffic stop; (3) one used in the shooting of the second two-year-old child in November 2022; (4) two recovered from Hooper's car during the February 2023 traffic stop; (5) one found in Hooper's car during the May 2023 traffic stop; and (6) one assault rifle posted on Hooper's Facebook page. The district court applied the four-point enhancement, determined that Hooper's total offense level was 29, and sentenced Hooper to 120 months of incarceration. Hooper timely appealed.

## II.

The Sentencing Guidelines provide that a defendant's offense level increases "[i]f the offense involved three or more firearms." U.S.S.G. § 2K2.1(b)(1). Specifically, a two-point

---

[3] Hooper's fingerprint was identified on the handgun's magazine.

[4] The government concedes that the Glock in the photo was recovered during the February 25 traffic stop.

enhancement applies if the defendant possessed between three and seven firearms, and a four-point enhancement applies if the defendant possessed between eight and twenty-four firearms. *Id.*

Hooper raises one issue on appeal: whether the district court properly applied the four-point enhancement because he possessed ten firearms. He concedes that he possessed the six firearms referenced in the superseding indictment: three located in his car in June 2022, two recovered during the traffic stop in February 2023, and one found during the traffic stop in May 2023. But in Hooper's view, there is "no evidence" that he possessed (1) the two firearms found in KL's car in June 2022, (2) a firearm associated with the shooting of the second two-year-old child in November 2022, or (3) the assault rifle in the Facebook photo. Because Hooper did not "constructively possess" these firearms, he submits that the district court should have applied the two-point enhancement instead. This argument fails.

## A.      Number of Firearms Possessed

By arguing that the district court miscalculated his total offense level, Hooper challenges the procedural reasonableness of his sentence. *See United States v. Sands*, 4 F.4th 417, 420 (6th Cir. 2021). While we review procedural reasonableness for an abuse of discretion, *see United States v. Adams*, 873 F.3d 512, 516–17 (6th Cir. 2017), we review the court's factual findings for clear error. *Sands*, 4 F.4th at 420. The district court's conclusion that Hooper possessed ten firearms is a factual finding. *See United States v. West*, 962 F.3d 183, 187 (6th Cir. 2020); *United States v. Barnes*, No. 23-1974, 2024 WL 4298918, at *2 (6th Cir. Sept. 26, 2024). Thus, that conclusion amounts to reversible error only if we are "left with the definite and firm conviction that a mistake has been committed." *United States v. Reed*, 72 F.4th 174, 190 (6th Cir. 2023) (quoting *Sands*, 4 F.4th at 420). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *United States v. Clay*, 346 F.3d 173, 178 (6th Cir. 2003) (quoting *United States v. Darwich*, 337 F.3d 645, 664 (6th Cir. 2003)).

The four-point enhancement under § 2K2.1(b)(1)(B) applies if the government proves by a preponderance of the evidence that the defendant possessed at least eight firearms. *See United States v. Lunato*, 763 F. App'x 483, 486 (6th Cir. 2019) (citing *United States v. Jackson*, 877 F.3d 231, 237–38 (6th Cir. 2017)). Possession may be actual or constructive. *Id.* Actual possession requires "immediate possession or control of the firearm," while constructive possession requires "knowingly ha[ving] the power and intention at a given time to exercise dominion and control over [the firearm], either directly or through others." *United States v. Campbell*, 549 F.3d 364, 374 (6th Cir. 2008) (internal quotation marks omitted). While mere proximity to a firearm does not establish constructive possession, other evidence may "supplement a defendant's proximity to a firearm in order to tip the scale in favor of constructive possession." *Id.* (citing *United States v. Grubbs*, 506 F.3d 434, 439 (6th Cir. 2007)). That is, constructive possession may be established by proximity plus some other indicia of control. *See Thompson v. Skipper*, 981 F.3d 476, 480 (6th Cir. 2020). Such indicia include a "connection with a gun, proof of motive, a gesture implying control, [or] evasive conduct." *Campbell*, 549 F.3d at 374 (quoting *United States v. Newsom*, 452 F.3d 593, 610 (6th Cir. 2006)).

The district court found by a preponderance of the evidence that Hooper possessed ten firearms.[5] But as the court acknowledged, "all we need to do is count to eight for [the enhancement] to apply." Sent'g Tr., R.91 at PageID 605. The count was not clearly erroneous.

First, the district court reasonably concluded that Hooper possessed the two handguns recovered from KL's car during the June 2022 traffic stop. To be sure, the mere fact that Hooper was in the car does not establish that he had constructive possession of the firearms. *See United States v. Bailey*, 553 F.3d 940, 947 (6th Cir. 2009). But here, there was evidence of proximity *and* "evasive conduct." *Campbell*, 549 F.3d at 374; *see also Illinois v. Wardlow*, 528 U.S. 119, 124

---

[5] The district court based its conclusion on the presentence report (PSR) and a government exhibit. *See* PSR, R.76 at PageID 498; Gov't Ex., R.94 at PageID 655. Hooper did not object to the facts contained in either document.

(2000) (noting that "[h]eadlong flight—wherever it occurs—is the consummate act of evasion"). Specifically, the firearms were located under the passenger seat—where Hooper was sitting—and presumably out of KL's reach. When the officers found them, Hooper ran away from the scene. In combination, these two factors show by a preponderance of the evidence that Hooper constructively possessed the firearms. *See United States v. Jackson*, No. 21-5297, 2022 WL 501565, at \*7 (6th Cir. Feb. 18, 2022) (recognizing that a defendant's proximity to a firearm in a car, combined with flight from law enforcement, can be sufficient to establish constructive possession).

Second, we find no reason to second-guess the conclusion that Hooper possessed a firearm in his apartment when the second two-year-old child was shot. Hooper correctly notes that law enforcement officers did not find a firearm in his apartment. But constructive possession can be proven by direct *or* circumstantial evidence. *United States v. Walker*, 734 F.3d 451, 455 (6th Cir. 2013). And here, there was plenty of circumstantial evidence. While Hooper claimed that the child was shot in a nearby park, multiple witnesses heard a gunshot inside his apartment building. His neighbor saw him run down the stairs with the child in his arms. When officers searched Hooper's apartment, they found (1) a pool of blood on the kitchen table, (2) a bullet-sized dent on the radiator, (3) a bullet on the ground, and (4) an empty handgun magazine under a couch cushion. In short, there is substantial evidence that a firearm was discharged in Hooper's apartment—where he lived alone—and the district court reasonably concluded that he possessed it.[6] *See United States v. Sadler*, 24 F.4th 515, 551 (6th Cir.) ("Proof that the person has dominion over the premises where the firearm is located is sufficient to establish constructive possession." (internal quotation marks omitted)), *cert. denied*, 143 S. Ct. 169 (2022).

---

[6] The district court acknowledged that the firearm used in the November 2022 shooting may have been recovered by law enforcement officers during the February 2023 or May 2023 traffic stops. *See* Sent'g Tr., R.91 at PageID 605 ("I don't know my guns well enough to be able to discern if [the firearm used in the apartment] could be the same gun that was later recovered from Mr. Hooper."). But even without counting this firearm, "we're still above eight." *Id.*

Third, the court did not err in finding that Hooper possessed the assault rifle that he posted on Facebook. At the sentencing hearing, the government presented a series of messages between Hooper and "Rich Lo Ty" from August 2022. Rich Lo Ty sent Hooper a picture of the assault rifle, and Hooper responded, "[w]e gotta get it." Gov't Ex., R.94-1 at PageID 658. Approximately two months later, Hooper posted the photo of the Glock with the drum magazine—which was later found in his car—and the assault rifle on Facebook. He added that he was "fast" with both firearms. *Id.* at PageID 660. Under the preponderance of the evidence standard, Hooper's photo and accompanying commentary establishes that he possessed the assault rifle. *See Lunato*, 763 F. App'x at 487 (noting that posing with firearms in a photograph can "demonstrate . . . power and intent to exercise control over said firearms"); *Barnes*, 2024 WL 4298918, at *2 (finding that the district court did not clearly err in concluding that a defendant had constructive possession of a firearm when he sent a photo of it to another person and explained its capabilities).

Because there was sufficient evidence that Hooper possessed the four firearms at issue on appeal, and Hooper does not contest that he possessed the six firearms listed in the superseding indictment, the district court reasonably concluded that Hooper possessed ten firearms.

## B.    "Relevant Conduct" Under the Sentencing Guidelines

In a single paragraph of his appellate brief, Hooper argues that his possession of the four challenged firearms is not "relevant conduct" under the Sentencing Guidelines and thus cannot be counted toward the four-point enhancement. *See* U.S.S.G. § 1B1.3. Because Hooper did not raise this argument before the district court, we review the district court's consideration of these four firearms for plain error. *See United States v. Ralston*, 110 F.4th 909, 919–20 (6th Cir. 2024). Under the plain error standard, Hooper must "show (1) error (2) that was obvious or clear, (3) that affected defendant's substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc) (internal quotation marks omitted).

At sentencing, the defendant's specific offense characteristics—such as the enhancement for possessing multiple firearms—are based on the defendant's relevant conduct. Relevant conduct includes offenses that are "part of the same course of conduct . . . as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). Multiple offenses are "part of the same course of conduct" if they are "sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." *Id.* § 1B1.3(a)(2) cmt. n.5(B)(ii); *see also United States v. Amerson*, 886 F.3d 568, 574 (6th Cir. 2018). To determine if the offenses are sufficiently connected or related, courts consider (1) the degree of similarity of the offenses, (2) the regularity of the offenses, and (3) the time interval between the offenses. U.S.S.G. § 1B1.3(a)(2) cmt. n.5(B)(ii); *see also United States v. Phillips*, 516 F.3d 479, 483 (6th Cir. 2008).

The district court did not err, plainly or otherwise, in concluding that Hooper's possession of the four challenged firearms is relevant conduct. First, there were sufficient similarities between each possession. The conduct at issue here—illegally possessing a firearm as a felon—"is identical to the offense of conviction." *Phillips*, 516 F.3d at 485. Moreover, Hooper admitted that he possessed the firearms "to protect [him]self" after he was shot in 2020. Sent'g Tr., R.91 at PageID 624–25. This claim of self-defense "indicates that each incident of illegal firearm possession is connected by the common purpose of self-defense and suggests that [Hooper] habitually carried firearms." *Phillips*, 516 F.3d at 485.

Second, Hooper regularly possessed firearms. Undeterred by the shootings in his apartment or his encounters with law enforcement, Hooper illegally possessed firearms in June 2022, October 2022, November 2022, February 2023, and May 2023. At the sentencing hearing, Hooper's attorney conceded that Hooper "carried a weapon all the time every day." Sent'g Tr., R.91 at PageID 621. That is sufficient to show regularity. *See United States v. Moore*, No. 22-3780, 2024 WL 3876649, at *3 (6th Cir. Aug. 20, 2024) (recognizing that "two instances of unindicted firearm possession [plus the indicted possession] create sufficient regularity for relevant conduct" (citing *Phillips*, 516 F.3d at 484)).

8

Third, the possessions occurred within a short period of time. Courts have "generally upheld the relevant conduct designation where the offenses were within a nine-month period" of the charged offenses. *United States v. Fisher*, 824 F. App'x 347, 360 (6th Cir. 2020) (quoting *Phillips*, 516 F.3d at 483). Here, Hooper pleaded guilty to possessing firearms in June 2022. The four possessions at issue on appeal occurred well within the nine-month window. *See Moore*, 2024 WL 3876649, at *3 (finding that the "temporal proximity" requirement was satisfied because the illegal firearms possessions occurred within nine months of the indicted offense).

In short, Hooper's possession of the four firearms at issue—the two handguns in KL's car, the firearm used by the second two-year-old child, and the assault rifle posted on Facebook—was relevant conduct, and the district court properly applied the four-point enhancement.

## III.

We **AFFIRM** the district court's judgment.