NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0307n.06

Case No. 24-3600

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Jun 17, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| DELMAR JACKSON, | ) | OHIO |
| | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

Before: GRIFFIN, LARSEN, and MATHIS, Circuit Judges.

**MATHIS, Circuit Judge.** While on a late-night stakeout, several law enforcement officers observed Delmar Jackson pull into a gas station and engage in behavior consistent with drug trafficking: He handled a small plastic baggie, moved in a suspicious manner, and conducted a hand-to-hand exchange with a man whom he let into his vehicle. On these facts, the officers converged on Jackson and discovered drugs, drug paraphernalia, cash, and a firearm. For this, Jackson was charged with, and convicted of, numerous drug-trafficking and firearms offenses. Jackson appeals the denials of his motion to suppress and his motion for judgment of acquittal. For the following reasons, we affirm.

## I.

In May 2021, the Garfield Heights Police Department ("GHPD") commenced a joint operation with the Ohio Investigative Unit ("OIU")—a law enforcement agency tasked with investigating vice crimes—to stymie the high level of criminal violence and narcotics activity at

the Turney Plaza shopping center and the surrounding area. On the night of July 11, 2021, as part of this effort, OIU Agents Kevin Cesaratto and Andrew Campbell, along with Sergeant Carlos Crespo of the GHPD, surveilled a gas station around Turney Plaza. The officers, acting undercover, parked two vehicles onsite at different locations; Agent Campbell and Sergeant Crespo occupied one vehicle, and Agent Cesaratto was alone in the other.

As the officers kept watch with their binoculars, Delmar Jackson pulled up to a gas pump in his vehicle. A female passenger exited Jackson's vehicle and went inside the gas station store. Jackson then opened the driver's side door, dropped a paper bag that contained a smaller plastic baggie, picked it back up, closed his door, and then looked around furtively. Soon after, another vehicle pulled into the gas station and parked across from (and parallel to) Jackson. Timothy Clayton—a skinny, sweaty, pale, and lethargic man—then stepped out of the vehicle and immediately entered the passenger side of Jackson's car. The officers then observed Jackson grab and manipulate something from the backseat and proceed to connect hands with Clayton. The officers, who had been communicating on radio, collectively decided to stop Jackson based on an apparent narcotics transaction.

Sergeant Crespo detained Clayton and uncovered a white powder substance—later confirmed to be cocaine—in his hands. Agent Campbell removed Jackson from his vehicle and in the process, he and Agent Cesaratto observed a firearm on the driver's side floorboard and drugs and cash on the driver's seat. At this point, other officers arrived on the scene. Agent Cesaratto advised Jackson of his *Miranda* rights, and when another officer prepared to pat Jackson down, Jackson bent over to complain and cash and cocaine fell from his waistband. The officers discovered a digital scale and a duffel bag containing various THC substances in the backseat area.

Sometime during this encounter Jackson claimed that he only sold Clayton marijuana, but he later stated he was not going to contest the case because they "got" him. The officers arrested Jackson.

A grand jury indicted Jackson for possession with intent to distribute cocaine (Count I) and fentanyl (Count II), both in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); using or carrying a firearm during and in relation to a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count III), and being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1) (Count IV). After an unsuccessful motion to suppress, Jackson went to trial. There, he unsuccessfully moved for a judgment of acquittal under Fed. R. Crim. P. 29, and a jury convicted him of all four counts. The district court sentenced Jackson to 120 months' imprisonment. He timely appealed.

## II.

Jackson raises two challenges to his convictions. He contends the district court erred in denying (1) his motion to suppress evidence seized from the officers' warrantless search of his car and person and (2) his motion for judgment of acquittal as to the firearms charges. We address each argument in turn.

## A.

Jackson first challenges the district court's denial of his motion to suppress. This requires us to "apply a mixed standard of review," *United States v. Taylor*, 121 F.4th 590, 594 (6th Cir. 2024), wherein we assess "legal conclusions de novo" and "factual findings for clear error," *United States v. Simmons*, 129 F.4th 382, 386 (6th Cir. 2025) (citation omitted). When, as here, a district court denied a motion to suppress, "we review all evidence in the light most favorable to the government." *United States v. Peake-Wright*, 126 F.4th 432, 436 (6th Cir. 2025) (quotation omitted). And our review consists of the whole record, including evidence admitted at the

suppression hearing and at trial.  *United States v. Underwood*, 129 F.4th 912, 930 (6th Cir. 2025) (citation omitted).

The Fourth Amendment prohibits unreasonable searches and seizures by police officers. U.S. Const. amend. IV.  To give this amendment teeth, the Supreme Court "establish[ed] an exclusionary rule that, when applicable, forbids the use of improperly obtained evidence at trial." *Herring v. United States*, 555 U.S. 135, 139 (2009).  Absent certain exceptions, a warrantless Fourth Amendment intrusion is "*per se* unreasonable." *United States v. Lewis*, 81 F.4th 640, 651 (6th Cir. 2023) (quotation omitted).

Still, officers may "conduct temporary investigative stops without a warrant." *United States v. McMullen*, 103 F.4th 1225, 1229 (6th Cir. 2024) (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). But to do so, an officer must have reasonable suspicion of criminal activity which, while not demanding, requires "more than a mere hunch or intuition." *United States v. McCallister*, 39 F.4th 368, 373–74 (6th Cir. 2022) (internal quotation marks omitted).  The reasonable-suspicion test requires us to consider whether the "totality of the circumstances" gave the officer a "particularized and objective basis to undertake a brief investigatory stop." *United States v. Sheckles*, 996 F.3d 330, 343–44 (6th Cir. 2021).

Here, the officers conducted a valid investigatory stop at the gas station.  The totality of circumstances at the time of the stop consisted of the following: (1) Jackson was in the driver's seat of his vehicle in a high-crime area late at night; (2) Jackson got the officers' attention when he dropped a brown paper bag with a smaller plastic bag inside it, as "narcotics are usually transferred and transported in small baggies," R. 45, PageID 283; (3) Jackson picked the bag up, and then looked around in a suspicious manner; (4) Clayton, an individual with features associated with addiction (i.e., skinny, pale, sweaty, and lethargic) parked near a gas pump, exited his vehicle

but did not buy gas, and immediately entered the passenger side of Jackson's vehicle; (5) after Clayton entered Jackson's vehicle, the officers observed Jackson reach into the backseat to retrieve an item and then shift his focus downward to manipulate something, a pattern of movement consistent with the preparation of narcotics; and (6) the officers saw what looked like a hand-to-hand transaction between Jackson and Clayton—a type of exchange common to drug deals.

Taken together, these circumstances gave rise to reasonable suspicion that Jackson was engaged in illegal activity. *See United States v. Johnson*, 620 F.3d 685, 692 (6th Cir. 2010) ("[P]resence in a high-crime location and the lateness of the hour . . . may be considered in the totality of the circumstances." (citation omitted)); *see also United States v. Faught*, No. 21-6123, 2022 WL 2813240, at *4 (6th Cir. July 19, 2022) ("We have repeatedly held that an officer's observation of a hand-to-hand transaction that looks like a drug deal can help establish the reasonable suspicion required for a stop to investigate the parties." (collecting cases)). This is especially so given the relevant experience of some of the officers involved—Agent Cesaratto had conducted vice investigations for the better part of nine years, and Agent Campbell had done this type of surveillance hundreds of times. *See United States v. Flores*, 571 F.3d 541, 544 (6th Cir. 2009).

True enough, Jackson points to different ways we can view the circumstances. For example, he argues that the gas station was not in a dangerous area because Turney Plaza—the site of similar drug-trafficking events and the locus of the officers' investigation—was a mile away and there were other gas stations in closer proximity. But viewing the evidence in the government's favor, as we must, the gas station's distance from the Plaza did not place it outside of a high-crime area. Indeed, Agent Campbell testified that it is one of the few nearby stations.

Jackson also disputes Agent Campbell's testimony that he saw Jackson's hands connect with Clayton's while Jackson and Clayton were in Jackson's vehicle. He argues that Agent Campbell's testimony seemingly contradicts Agent Cesaratto's testimony that Jackson's and Clayton's hands were not visible. But the agents were in separate cars positioned at different angles and thus they were prone to see the situation somewhat differently. So even if there is merit to Jackson's rendition of the events, it is of no consequence; for where "both stories are plausible on the record as a whole," we cannot set aside the district court's finding. *United States v. Estrada-Gonzalez*, 32 F.4th 607, 614 (6th Cir. 2022) (citation omitted).

Because the officers' seizure of Jackson was constitutional, the district court did not err in denying Jackson's motion to suppress.

**B.**

Next, Jackson asserts that the district court erred when it denied his motion for judgment of acquittal because insufficient evidence supported the two firearms convictions. We review sufficiency-of-the-evidence challenges de novo but, even so, defendants must satisfy a "very heavy burden." *United States v. Ledbetter*, 929 F.3d 338, 351 (6th Cir. 2019) (quotation omitted). "[W]e view the evidence in the light most favorable to the government and ask whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt." *United States v. Bolos*, 104 F.4th 562, 573 (6th Cir. 2024) (internal quotation marks omitted). Relatedly, "we must draw all available inferences and resolve all issues of credibility in favor of the jury's verdict." *United States v. Robinson*, 99 F.4th 344, 353 (6th Cir. 2024) (internal quotation marks omitted). And circumstantial evidence, by itself, "can defeat a sufficiency challenge." *United States v. Brooks*, 987 F.3d 593, 603 (6th Cir. 2021) (quotation omitted).

*Felon-in-Possession charge.* Jackson was charged with violating 18 U.S.C. § 922(g)(1), which prohibits felons from possessing firearms. To obtain a felon-in-possession conviction, the government must prove beyond a reasonable doubt that: (1) the defendant had a prior felony conviction, (2) the defendant knew that he had a prior felony conviction, (3) the defendant thereafter knowingly possessed the firearm specified in the indictment, and (4) the firearm had traveled in interstate commerce. *United States v. Ward*, 957 F.3d 691, 696 (6th Cir. 2020) (citing *Rehaif v. United States*, 588 U.S. 225, 237 (2019)). "A jury may convict a defendant for a § 922(g)(1) violation based on either actual or constructive possession of a firearm." *United States v. Raymore*, 965 F.3d 475, 483 (6th Cir. 2020) (internal quotation marks omitted).

Jackson challenges only whether the evidence proved that he constructively possessed a firearm. "To establish constructive possession, the evidence must indicate [Jackson's] ownership, dominion, or control over the contraband itself or the . . . vehicle in which the contraband is concealed." *United States v. Russell*, 595 F.3d 633, 645 (6th Cir. 2010) (quotation omitted). But constructive possession of a firearm cannot be "supported solely by the tenuous link of mere proximity"—we require additional evidence. *United States v. Campbell*, 549 F.3d 364, 376 (6th Cir. 2008).

Here, the trial evidence supports the jury's verdict. At trial, the jury heard testimony that Jackson was in the driver's seat of his vehicle, and upon his removal from the vehicle officers saw—in plain view—a firearm on the driver's side floorboard. This alone can establish Jackson's constructive possession of the firearm. *See United States v. Parker*, No. 22-6047, 2024 WL 464492, at *3 (6th Cir. Feb. 7, 2024) (holding that evidence of the defendant "driving his own vehicle" with a firearm "in plain sight by his feet" was sufficient circumstantial evidence for a jury

to infer that the defendant "knew the gun was there and likely placed it there himself" (quotation omitted)).

But there is more. Officers also testified that, along with the firearm, they found drugs on the driver's seat of the vehicle, and that drugs fell from Jackson's person after he exited his car. This combination of evidence comes as no surprise, for we have long considered firearms to be "tools of the drug-trafficking trade." *United States v. Cleveland*, 907 F.3d 423, 436 (6th Cir. 2018) (quotation omitted). And given this premise, a jury could reasonably "infer [Jackson's] constructive possession of [the] gun based on [the] nearby evidence of [his] drug dealing." *Thompson v. Skipper*, 981 F.3d 476, 481 (6th Cir. 2020).

Jackson resists this conclusion, arguing that the lack of forensic proof and background information on the firearm cuts against a finding of constructive possession. But scientific evidence is unnecessary to sustain a felon-in-possession conviction. *United States v. Griffin*, 663 F. App'x 439, 445 (6th Cir. 2016) ("[F]ingerprint, DNA, or gunshot-residue evidence . . . is not necessary to support a [§ 922(g)(1)] conviction."). Similarly, the government need not "introduce any evidence as to the gun's registration." *United States v. Williams*, 223 F. App'x 441, 444 (6th Cir. 2007) (per curiam). Jackson also suggests that the evidence is insufficient as Clayton and a female passenger had also been in the front seat of Jackson's vehicle just before officers detained him and found the firearm. Even assuming that these facts give rise to a *joint* constructive-possession theory and that the government needed to produce proof beyond the norm, the evidence discussed above "establishes the 'more' that is [possibly] required." *See United States v. Malone*, 308 F. App'x 949, 955 (6th Cir. 2009).

*Section 924(c) charge.* Jackson was charged with violating 18 U.S.C. § 924(c)(1)(A), which penalizes using or carrying a firearm during or in relation to a drug-trafficking crime. To

sustain a conviction under this statute, the government must prove that a defendant: (1) knowingly used or carried a firearm; (2) committed a drug-trafficking crime; and (3) used or carried the firearm during and in relation to the drug-trafficking crime. *United States v. Cecil*, 615 F.3d 678, 692–96 (6th Cir. 2010). Relevant here, the parties dispute the third element.[1]

The "during and in relation to" element requires the government to show that the firearm had "some purpose or effect with respect to the drug trafficking crime, and at least must facilitate, or have the potential of facilitating, the drug trafficking offense." *United States v. Layne*, 192 F.3d 556, 571 (6th Cir. 1999) (internal quotation marks omitted). "We analyze that purpose and effect in terms of the totality of the circumstances surrounding the commission of the crime." *United States v. Ostrander*, 411 F.3d 684, 692 (6th Cir. 2005) (internal quotation marks omitted) (unpublished appendix).

The trial evidence supports the jury's verdict. Jackson was seated on the driver's side of his vehicle when officers observed his exchange with Clayton, who, upon exiting the vehicle, had a folded piece of paper in his fist that tested positive for cocaine. Officers then removed Jackson and observed a firearm on the floorboard of the driver's side along with currency and bags of drugs on the driver's seat. Officers also found drug paraphernalia—a digital scale—on the floor of the backseat. And after he was detained, Jackson leaned forward to complain and cocaine and a large sum of cash fell from his waistband. Thus, the "very close proximity" of the firearm, cash, cocaine, and drug paraphernalia "to each other"—all "within [Jackson's] easy reach while he was in the [vehicle]"—reasonably suggests that Jackson carried the gun "during and in relation to" the charged drug-trafficking offense. *See United States v. Martin*, 210 F.3d 373, 2000 WL 353538, at

---

[1] Jackson also disputes the first element, but his arguments fail. The same evidence that shows that Jackson possessed the firearm also indicates that Jackson carried the firearm.

*2 (6th Cir. Mar. 28, 2000) (unpublished table decision); *see also United States v. Cherry*, 8 F. App'x 420, 422 (6th Cir. 2001) (per curiam) ("Defendant ignores that his close proximity to the drugs, the gun, the concealed holster, and the additional ammunition is sufficient circumstantial evidence, when viewed in a light most favorable to the prosecution, to support the § 924(c) conviction.").

Moreover, Jackson's firearm was a loaded, semiautomatic pistol—facts upon which the jury may rely to connect it with his drug trafficking. *See United States v. Skinner*, No. 03-4208, 2005 WL 310904, at *4 (6th Cir. Feb. 9, 2005) (per curiam); *cf. United States v. McKinney*, 818 F. App'x 412, 417 (6th Cir. 2020) ("[H]andguns . . . are more likely to be used by drug dealers than other types of guns." (citation omitted)). And relatedly, a rational juror could have concluded that Jackson carried the firearm to protect his drug proceeds, which also helps satisfy the "during and in relation to" requirement. *See United States v. Clemons*, 9 F. App'x 286, 290 (6th Cir. 2001).

## III.

For these reasons, we **AFFIRM** the district court's judgment.